## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN

NORTHWOOD, INC.
a Michigan corporation,

      Plaintiff,

v.

CLINICAL WOUND SOLUTIONS, LLC,
An Illinois limited liability company,

      Defendant.

Case No.

Hon.

---

## VERIFIED COMPLAINT

Plaintiff, Northwood, Inc. ("Northwood"), by and through its attorney Brandon K. Fasse of FASSE LAW, PLLC, for its complaint against Clinical Wound Solutions, LLC ("CWS"), states as follows:

### NATURE OF THE ACTION

1. Northwood, a licensed third-party administrator of health insurance claims for health insurance plans, brings this action seeking compensation for damages caused by Defendant's breach of contract and injunctive relief.

2. Defendant, a provider of medical supplies, has and is *presently engaged* in invoicing/billing activities that are in breach of a provision of an agreement between the parties which prohibits the seeking of reimbursement for medical supplies from health plan members.

3. Northwood discovered Defendants improper conduct when multiple customers called to report receipt of invoices from CWS.

1

4. Northwood brings this action for compensation and injunctive relief and to hold Defendant responsible for its improper conduct.

## PARTIES

5. Plaintiff Northwood, Inc. is a corporation organized under the laws of the State of Michigan, with its principal place of business at 25790 Commerce Drive, Madison Heights, MI 48071.

6. Defendant Clinical Wound Solutions, LLC is a limited liability company organized under the laws of the State of Illinois, with its principal place of business at 1084 Industrial Drive, Unit 5, Bensenville, Il 60106.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a)(1).

8. The amount of damages at issue exceeds $75,000, exclusive of interest and costs.

9. The court has personal jurisdiction over the Defendant because they transact or have transacted business in the Eastern District of Michigan by, for example, contracting with and submitting health insurance claim forms to Plaintiff Northwood within the Eastern District of Michigan.

10. In addition, the Court has personal jurisdiction over the Defendant because Defendant entered into a contract with Plaintiff Northwood which necessitated the flow of information and documents into the Eastern District of Michigan.

11. Additionally, the Court has personal jurisdiction over the Defendant because the agreement which makes up the basis of this claim (Attached as **Exhibit A**) contains a

2

valid governing law provision which states that the laws of the State of Michigan shall apply to any controversy thereunder.

12. Venue is proper in the Easter District of Michigan pursuant to 28 U.S.C § 1391(a) in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and Defendant is subject to personal jurisdiction in this district.

## FACTS

13. Northwood is a third-party administrator of health insurance claims for medical equipment and supplies.

14. Northwood contracts with health insurance plan clients to facilitate the provision of medical equipment and supplies to members of client health insurance plans.

15. Northwood contracts with numerous *providers* of medical supplies in order to make products available for and facilitate the provision of medical supplies to health plan end user members. These providers constitute the "Northwood Network" of providers.

16. CWS is a provider of medical supplies to end users that specializes in wound care products and supplies.

17. On July 30, 2015, Northwood entered into a Participating Supplier Agreement ("Agreement") with CWS for the provision of itemized products and services to health plan client members.

18. The Agreement prescribes the manner and course of conduct by which CWS is to provide products and services to health plan members or "Covered Persons" as defined in the Agreement.

19. The Fee Schedule to the Agreement itemizes the specific products and services and associated reimbursement rates for products that CWS agreed to provide to Covered

Persons. These products and services are defined in the Agreement as "Covered Services".

20. The Agreement and Provider Manual (incorporated into the Agreement by reference) set forth in detail the process by which a participating supplier such as CWS is to furnish services, collect essential documentation from patients evidencing said services, and then submit to Northwood for reimbursement at the specified reimbursement rate.

21. The agreement at § 4.6 provides for Northwood's implementation of routine audit procedures to ensure that Covered Services are being rendered to Covered Persons in a manner which is not violative of contractual and regulatory standards for such services.

22. After CWS failed a number of appropriately conducted internal audits for failure to provide Northwood with adequate claim information, Northwood properly terminated its Agreement with CWS effective as of November 7, 2018.

23. Following termination of the Agreement, CWS filed a lawsuit in DuPage County Circuit Court (Illinois) alleging that Northwood improperly retained reimbursement owed to CWS in violation of the Agreement. That lawsuit was removed to the U.S. District Court for the Northern District of Illinois where it remains pending.

24. The Agreement at § 5.5 states in relevant part that **"Participating Supplier shall look only to Northwood for Covered Services rendered to a Covered Person. Participating Supplier agrees that in no event shall it bill, charge collect or attempt to collect a deposit from, seek compensation or remuneration from, surcharge or have any recourse against a Covered Person by Participating Supplier"**. The Section "shall survive termination of this Agreement, regardless of the cause of termination of this Agreement, and shall be construed to be for the benefit of Covered Persons.

25. Beginning in June 2020, Northwood customer service personnel began receiving complaints from Covered Persons that they had received invoices from CWS for amounts CWS alleges are owed to it by Covered Persons.

26. Security Health Plan, a client health plan of Northwood, first reported to Northwood on June 2, 2020 that a Covered Person was being billed directly by CWS for Covered Services.

27. Beginning in mid-September of 2020, Northwood began receiving a significant amount of complaints regarding invoices received from CWS requesting remuneration for services allegedly rendered by CWS. The fielding of said complaints required significant time and resources on behalf of Northwood.

28. Northwood began tracking reports of the improper invoicing and requesting proof from Covered Persons in the form of the transmitted invoices. The supporting documentation collected and assembled to date, attached hereto as **Exhibit B**.

29. Upon information and belief, a number of the invoices sent to Covered Persons were for sums previously paid to CWS by Northwood (double billing).

30. Upon information and belief, a number of the invoices were sent to Covered Persons who were deceased.

31. On October 6, 2020, Northwood sent CWS a cease and desist letter via certified mail detailing the alleged improper billing conduct and requesting assurance that the invoicing would cease immediately. Northwood's letter provided for a response window of ten (10) days. Northwood received no response from CWS.

## COUNT I- BREACH OF CONTRACT

32. Northwood hereby repeats and realleges the allegations in paragraphs 1 to 31 above as if set forth fully herein.

33. As set forth above, CWS violated section 5.5 of the Agreement.

34. As a result of this breach, Northwood suffered reputational harm and economic damages of not less than $75,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Northwood demands judgment against Defendant as follows:

a. An order entering judgment in favor of Northwood against Defendant;

b. An order awarding Northwood damages in an amount to be determined, but in no event less than $75,000;

c. An order awarding Northwood attorney fees and other costs prescribed by the Agreement and as determined appropriate by the Court;

d. An order enjoining Defendant from engaging in the billing activities as described herein now and forever.

Respectfully submitted,

By: _____

FASSE LAW, PLLC
Brandon K. Fasse (P80370)
25790 Commerce Drive, Suite 100
Madison Heights, MI 48071
(586) 354-7243
brandon@fasselaw.com

Dated: December 23, 2020.                    *Attorney for Plaintiff*

6

## **VERIFICATION PAGE**

*I declare the facts stated above are true to the best of my personal knowledge, information, and belief:*

By: _____

Kenneth G. Fasse, President, Northwood, Inc.

**EXHIBIT A**



# Northwood

## NORTHWOOD, INC.
## PARTICIPATING SUPPLIER AGREEMENT

I. DEFINITIONS ........................................................................................... 3
    1.1   "Covered Person" ........................................................... 3
    1.2   "Covered Services" ......................................................... 3
    1.3   "Dependent" .................................................................. 3
    1.4   "Employee" .................................................................... 3
    1.5   "Employer" .................................................................... 3
    1.6   "Home Care Products and Services" ............................. 3
    1.7   "Member" ...................................................................... 3
    1.8   "Non-Covered Services" ................................................. 3
    1.9   "Participating Supplier" ................................................. 4
    1.10  "Participating Supplier Agreement" .............................. 4
    1.11  "Plan" ............................................................................ 4
    1.12  "Plan Sponsor" ............................................................... 4
    1.13  "Program" ...................................................................... 4
    1.14  "Group Service Agreement" ............................................ 4

II. OBLIGATIONS OF PARTICIPATING SUPPLIER ................................... 4
    2.1   Provision of Covered Services ....................................... 4
    2.2   Policies and Procedures ................................................. 4
    2.3   Maintenance of Licenses and Certifications .................. 4
    2.4   Nondiscrimination ......................................................... 4
    2.5   Site Evaluations ............................................................. 5
        2.5.1   Government Agency Access .................................. 5
        2.5.2   Northwood's Access ............................................ 5
    2.6   Liability Insurance ......................................................... 5
    2.7   Employee Self-Determination ....................................... 5
    2.8   Access to Covered Services ............................................ 6
    2.9   Conformity to Law ......................................................... 6
    2.10  Professional Practice ..................................................... 6
    2.11  Group Purchase Agreement ........................................... 6

III. OBLIGATIONS OF NORTHWOOD ....................................................... 6
    3.1   Provision of Services ...................................................... 6
    3.2   Administrative Services ................................................. 6

IV. MUTUAL OBLIGATIONS OF NORTHWOOD AND PARTICIPATING SUPPLIER ..................... 6
    4.1   Appointment of Coordinators ........................................ 6
    4.2   Services to Non-Covered Persons ................................. 6
    4.3   Grievances ..................................................................... 7
    4.4   Marketing ...................................................................... 7

EXHIBIT A

Document received on 10/30/2018 7:55 AM Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

|       | 4.5   | Records. | 7 |
|       |       | 4.5.1 Participating Supplier Records | 7 |
|       |       | 4.5.2 Northwood Centralized Membership Records | 7 |
|       |       | 4.5.3 Joint Records | 7 |
|       | 4.6   | Financial Data and Audits | 8 |
|       | 4.7   | Quality Assurance and Utilization Management | 8 |
|       |       | 4.7.1 Participating Supplier Obligations | 8 |
|       |       | 4.7.2 Northwood Obligations | 8 |

**V. PAYMENT FOR SERVICES** ............................................................. 8
|       | 5.1   | Rate of Payment | 8 |
|       | 5.2   | Payment Terms | 9 |
|       | 5.3   | Non-Covered Services | 9 |
|       | 5.4   | Claims and Submission | 9 |
|       | 5.5   | Hold Harmless | 9 |
|       | 5.6   | Coordination of Benefits | 9 |

**VI. TERM AND TERMINATION** ........................................................... 10
|       | 6.1   | Term and Termination | 10 |
|       | 6.2   | Breach of Agreement | 10 |
|       | 6.3   | Effect of Termination on Provision of Services | 10 |
|       | 6.4   | Immediate Termination | 10 |
|       | 6.5   | Continued Obligations Upon Termination | 10 |
|       |       | 6.5.1 Designating Alternative Participating Supplier. | 10 |
|       |       | 6.5.2 Transfer of Records | 10 |
|       |       | 6.5.3 Utilization and Financial Audits | 10 |

**VII. MISCELLANEOUS** ................................................................... 11
|       | 7.1   | Independent Contractor Status | 11 |
|       | 7.2   | Additional Northwood Programs | 11 |
|       |       | 7.2.1 Notification | 11 |
|       | 7.3   | Entire Agreement | 11 |
|       | 7.4   | Amendment | 11 |
|       | 7.5   | Invalid Provision | 11 |
|       | 7.6   | Governing Law | 11 |
|       | 7.7   | Notice | 12 |
|       | 7.8   | Assignment | 12 |
|       | 7.9   | Indemnification | 12 |
|       | 7.10  | No Third Party Rights | 12 |
|       | 7.11  | Waiver | 12 |
|       | 7.12  | Remedies | 12 |

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

# NORTHWOOD, INC.
## PARTICIPATING SUPPLIER AGREEMENT

THIS AGREEMENT is made this 30th day of July 20 15 by and between Northwood, Inc., a Michigan business corporation ("Northwood"), and Clinical Wound Solutions, LLC _____ ("Participating Supplier").

## RECITALS

A.    Northwood is a business corporation, which among other things, is licensed as a third party administrator in Michigan.

B.    Northwood proposes to offer a Managed Home Care Products and Services Program (as defined herein) to Plan Sponsors other organizations (the "Program");

C.    Northwood desires to enter into agreements with providers and suppliers of Home Care Products and Services to provide the equipment, supplies, and services necessary to fulfill Northwood's objectives.

D.    Participating Supplier is a home care provider or supplier which desires to provide Home Care Products and Services to Plan Sponsors and other organizations contracting with Northwood for such products and services.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth below, Northwood and Participating Supplier agree as follows:

## I. DEFINITIONS

For the purposes of this agreement, the following terms shall have the meanings set forth below:

1.1    "Covered Person" means any Member, Employee or Dependent or any other person covered by and entitled to benefits under any Group Service Agreement.

1.2    "Covered Services" means all of the Home Care Products and Services which Covered Persons are entitled to receive under the Group Service Agreement and which are listed on Exhibit A attached hereto and incorporated herein.

1.3    "Dependent" means any individual considered by the Plan Sponsor to be a dependent of a Member.

1.4    "Employee" means any individual considered by the Employer to be an employee.

1.5    "Employer" means any employer group that has entered into a Group Service Agreement with Northwood for the Program.

1.6    "Home Care Products and Services" means those products and services designed to enable individuals to be treated in their homes or provider's facility, including, but not limited to, home health services, provision of durable medical equipment and supplies, prosthetic and orthotic equipment and supplies, assisted technologies, and home infusion therapy equipment and supplies.

1.7    "Member" means an individual covered by or enrolled in a Plan.

1.8    "Non-Covered Services" means all health care services which are not Covered Services under the Northwood, Inc. Group Service Agreement.

PA-11c
10-26-10
Page 3 of 14

1.9    "Participating Supplier" shall mean a Home Care Products and Services provider or supplier that has entered into a Participating Supplier Agreement to provide Home Care Products and Services to Covered Persons.

1.10    "Participating Supplier Agreement" means the written agreement between Northwood and a Participating Supplier described in Section 1.9.

1.11    "Plan" means a Member's health care benefits as set forth in the Member's Summary Plan Description, Certificate of Coverage or other applicable coverage document.

1.12    "Plan Sponsor" means an employer, auto insurance carrier, workers' compensation carrier, insurer, health plan (public or private), third party administrator, labor union, organization or other person or entity which has contracted with Northwood to offer home care products and services to Covered Persons and has agreed to be responsible for funding benefit payments for Covered Services provided to Members under the terms of a Plan.

1.13    "Program" means the Managed Home Care Products and Services program offered by Northwood.

1.14    "Group Service Agreement" means the written agreement between Northwood and a Plan Sponsor, pursuant to which Northwood has agreed to arrange for delivery of Covered Services to Member's under a Plan and may have agreed to process claims and provide utilization review, quality monitoring and care management services.

## II. OBLIGATIONS OF PARTICIPATING SUPPLIER

2.1    Provision of Covered Services.  Participating Supplier agrees to provide all Covered Services to Covered Persons who choose to receive such services from Participating Supplier or who are referred or assigned to Participating Supplier by Northwood, and agrees to provide all such Covered Services in accordance with this Agreement and the Group Service Agreement. Participating Supplier agrees that all such Covered Services shall be rendered in accordance with the generally accepted standards of practice for Home Care Products and Services.

2.2    Policies and Procedures. Participating Supplier shall adhere to and be bound by all Northwood's policies, procedures, guidelines, and manual provisions, as set forth in Northwood's current Participating Provider Manual and as they may exist from time to time, including, but not limited to, instructions concerning verification of eligibility, coordination of benefits, transfer policies, quality assurance and utilization management, peer review, and Northwood's grievance policy and procedures, provided that such policies and procedures are not inconsistent with this Agreement. Northwood agrees to apply its policies consistently and to use its good faith efforts to notify Participating Supplier of any material changes in Northwood's policies which could have a material effect on Participating Supplier.

2.3    Maintenance of Licenses and Certifications. Participating Supplier shall maintain in good standing all licenses and certifications required by federal and state law and regulations. Participating Supplier shall notify Northwood immediately upon loss or suspension of Medicare or Medicaid certification or termination from the Medicare or Medicaid programs.

2.4    Nondiscrimination. Participating Supplier shall not discriminate against any Covered Person based upon the frequency or extent of Covered Services needed by the Covered Person. Participating Supplier shall not unlawfully discriminate in the acceptance or treatment of Covered Persons because of their religion, race, color, national origin, age, sex, height, weight, marital status, or physical handicap.

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:23 # 4394367/17043109519J

2.5   Site Evaluations.

    2.5.1   Government Agency Access. Participating Supplier shall permit on-site evaluations of Participating Supplier's facilities, offices and records, periodically, as required by the terms of this agreement, current State and federal law, regulations, and in accordance with the provisions of any contracts which may exist between Northwood and Plan Sponsors, including any and all service agreements in connection therewith. Participating Supplier shall permit representatives of Northwood and Plan Sponsors, and of any duly authorized state or federal regulatory agency, to inspect, upon reasonable notice (or without notice in the case of a regulatory agency so authorized by law), the premises and equipment used by them in their provision of Covered Services hereunder, and their business and records relating to this Agreement, and to study all phases of the provision of Covered Services hereunder. Participating Supplier further agrees to comply with those agencies' recommendations, if any; provided, however, that Participating Supplier may appeal the agency's decision in accordance with applicable laws, rules, and regulations and Northwood shall cooperate with Participating Supplier in any appeal process provided said appeal is not frivolous. During the appeal process, Participating Supplier shall make a good faith effort to comply with any part of the agency's recommendation not subject to the appeal. Northwood shall give Participating Supplier reasonable notice of its intent to conduct a site visit and will give Participating Supplier reasonable notice of any agency's plans to conduct a site visit if Northwood receives such notice.

    2.5.2   Northwood's Access. Participating Supplier will, from time to time and upon reasonable notice from Northwood, and subject to applicable laws and rules governing confidentiality of Covered Persons care and medical records, obtain permission and make arrangements for Northwood personnel to: (i) inspect Participating Supplier's facilities, offices, and equipment during normal business hours; (ii) inspect and review during normal business hours the medical records of Covered Persons; (iii) review all home care services provided to Covered Persons by Participating Supplier; and (iv) obtain copies of Covered Persons' medical records for quality management and other administrative purposes with reasonable notice consistent with quality assurance and utilization management and confidentiality policies of Northwood. Northwood will attempt to limit such reviews and inspections to a random or selected sampling basis where possible.

2.6   Liability Insurance. Participating Supplier shall maintain liability insurance through a commercial insurance carrier or self-funded program in amounts equivalent to those typically maintained by similar businesses, including comprehensive general liability insurance in an amount satisfactory to Northwood. Participating Supplier shall provide Northwood with proof of insurance required by this Section upon request. Participating Supplier agrees to notify Northwood immediately if any insurance policy covering services provided under this Agreement is materially modified or terminated. Northwood makes no representation that the limits of liability specified in this Paragraph are adequate to protect Participating Supplier against liability arising from provision of services by the Participating Supplier pursuant to this Agreement. In the event that Participating Supplier believes that any such insurance coverage called for under this Agreement is insufficient, Participating Supplier shall provide, at its own expense, such additional insurance as Participating Supplier deems adequate.

2.7   Employee Self-Determination. Participating Supplier acknowledges that Covered Persons have the right under state and federal law to make decisions regarding medical care, including the right to accept or refuse life-sustaining treatment. Participating Supplier agrees to comply with the Patient Self-Determination provisions of the Omnibus Budget Reconciliation Act of 1990, as amended and applicable state law to the extent these laws apply to services provided by Participating Supplier pursuant to this Agreement.

2.8     Access to Covered Services. Participating Supplier shall organize its provision of Covered Services to Covered Persons in a manner designed to maximize the accessibility of Covered Services to Covered Persons under the Program. Participating Supplier shall provide standard business hours and reasonable provisions for Home Care Products and Services. Participating Supplier shall take steps to assure that Covered Persons have access to Covered Services on the same basis as other patients of Participating Supplier.

2.9     Conformity to Law. Participating Supplier shall provide services in a manner which conforms to all applicable federal, state and local laws, rules and regulations, including laws related to lobbying and the influence of federal transactions, and all applicable professional ethical standards; and, to the extent applicable, Participating Supplier will commit no acts of commission or omission violating or causing to be violated any provision of the Michigan Third Party Administrator Act, same being MCLA 50.901 seq., by such Supplier or Northwood.

2.10    Professional Practice. Participating Supplier shall be solely responsible for rendering all equipment, supplies, and services to Covered Persons pursuant to this Agreement in accordance with accepted industry standards. Participating Supplier acknowledges and accepts that Northwood shall have no obligation to, or liability for, Participating Supplier's judgement in providing or failing to provide Home Care Products or Services to Covered Persons in the performance of this Agreement.

2.11    Group Purchase Agreement. Participating Supplier acknowledges that it may purchase durable medical equipment, medical supplies and surgical supplies, including replacement, provided to Covered Person's under the terms of this Agreement through Northwood's group purchasing arrangement if such equipment and supplies are available.

## III.  OBLIGATIONS OF NORTHWOOD

3.1     Provision of Services. Northwood shall negotiate contracts with Plan Sponsors and other groups of individuals to arrange for the provision of Covered Services. Northwood cannot guarantee that it will obtain any minimum number of contracts or Covered Persons or that any minimum number of Covered Persons will select or be assigned to Participating Supplier. Northwood shall use its best efforts to honor the Covered Person's right to choose the Provider of their choice within the Participating Supplier Network.

3.2     Administrative Services. Northwood, or its designee, shall provide administrative, accounting, and marketing functions necessary for the development and operation of Northwood, including, providing Participating Supplier with reports necessary for the operation of a cost containment and utilization programs.

## IV.  MUTUAL OBLIGATIONS OF NORTHWOOD AND PARTICIPATING SUPPLIER

4.1     Appointment of Coordinators. Northwood and Participating Supplier agree that the effective functioning of Northwood is dependent upon cost containment and utilization review, consistent with customary business practices. Participating Supplier shall appoint an individual acceptable to Northwood to work in coordination with Northwood's President or his/her designee for the purpose of fulfilling the requirements of this Agreement. The appointed coordinator will respond to inquiries by Covered Persons about Northwood's procedures and will act as the day-to-day liaison between Participating Supplier and Northwood regarding Covered Persons' eligibility for services.

4.2     Services to Non-Covered Persons. Northwood and Participating Supplier agree that Participating Supplier shall be free to provide services to customers other than Covered Persons, and to contract with any other payment and delivery program.

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

4.3     Grievances. Northwood shall notify Participating Supplier concerning all Covered Persons' complaints involving it and Participating Supplier shall notify Northwood of any complaint received from Covered Persons. Participating Supplier shall use good faith efforts to investigate such complaints, and in consultation with Northwood, shall use its best efforts to resolve them in a fair and equitable manner. To the extent applicable, Participating Supplier shall participate in and cooperate with Northwood's grievance policies and procedures and comply with all final determinations provided in accordance with such policies and determinations. A copy of the Northwood Grievance Procedures is included in the Provider Manual, a copy of which has been provided to Participating Supplier. Upon request, Participating Supplier will make available a copy of Northwood's Grievance Procedure contained in the Northwood Provider Manual.

4.4     Marketing. Participating Supplier hereby consents to the use of its name, address and description of its business in Northwood's marketing, advertising, or media materials developed and disseminated by Northwood to Covered Persons, Plan Sponsors, other groups, health care providers, and the general public. Northwood shall make good faith efforts to notify Participating Supplier and seek input from Participating Supplier regarding Northwood's marketing pursuant to this Agreement. The assistance and involvement of Participating Supplier in the marketing of Northwood is mutually beneficial to both Participating Supplier and Northwood, however, Participating Supplier shall undertake no marketing, advertising, sales or enrollment activities pertaining to Northwood nor use any written material in any such activity without Northwood's prior written consent. Participating Supplier recognizes that this Agreement may be terminated before its term expires and Participating Supplier agrees that Northwood shall not be liable to Participating Supplier for Northwood's continued use of lists including the Participating Supplier's name, if such lists were in preparation before Northwood received notice of Participating Supplier's termination. Participating Supplier shall hold Northwood harmless for Northwood's reliance upon inaccurate or incomplete information provided by Participating Supplier.

4.5     Records.

4.5.1     Participating Supplier Records. Participating Supplier shall maintain adequate records in accordance with state and federal law and regulations for Covered Persons which shall, subject to applicable privacy and confidentiality requirements, be made available to any physician attending the Covered Person, with the Covered Person's written authorization. Participating Supplier shall make fully available its records pertaining to Covered Persons to Northwood, when reasonably requested for the purpose of quality assurance and utilization management, grievances, benefit determinations, credentialing, or other legitimate functions required by Northwood. Upon termination of this Agreement, or upon Northwood's request and the Covered Person's consent, Participating Supplier shall transfer a copy of all or any portion of Covered Persons' records to Northwood or a provider or entity affiliated with Northwood or designated by Northwood, as permitted by law. The costs of providing copies of records directly to a Covered Person for personal use not related to the delivery of Covered Services may be billed to the Covered Person at a reasonable and customary rate of no greater than $.05 per page. Participating Supplier may not charge Northwood or any Covered Person for any costs related to providing copies of records except as otherwise permitted in this Agreement.

4.5.2     Northwood Centralized Membership Records. Northwood, or its designee, shall maintain centralized membership records identifying all Covered Persons by name, schedule of benefits, and such other information as Northwood shall reasonably determine is necessary or that is made available to Northwood by a Plan Sponsor, other groups, or programs under the Group Service Agreement for carrying out the purposes of this Agreement.

4.5.3     Joint Records. Participating Supplier and Northwood shall cooperate with each other to maintain such statistical records relating to Covered Services provided under this Agreement as required by state laws, regulations, and guidelines.

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

4.6    Financial Data and Audits. Participating Supplier shall maintain accounting procedures consistent with standard accounting practices. Participating Supplier will furnish Northwood with such financial and operating reports concerning the provision of Covered Services by Participating Supplier to Covered Persons as Northwood shall reasonably require and shall allow Northwood to make reasonable inspections of the records used to prepare such reports. Such reports typically include information and documentation necessary to determine scope and extent of services provided to Covered Persons and records that would verify patient encounters, medical necessity, proof of transactions and remittance/payment. Northwood agrees to keep confidential any financial information it obtains from Participating Supplier unless disclosure is required by law or has been agreed to by Participating Supplier. Participating Supplier and Northwood agree to submit to post-payment audits conducted by the appropriate state and federal agencies or by Northwood in conjunction with the services provided under this Agreement. Audits conducted by Northwood shall be conducted within the time periods specified in this Agreement. Neither Northwood nor Participating Supplier shall have the right to assert claims against each other based on such audits, if such audits pertain to claims more than 180 days after the date of service, unless fraud or intentional misrepresentation is established.

4.7    Quality Assurance and Utilization Management.

4.7.1    Participating Supplier Obligations. Participating Supplier shall provide Covered Services in a manner consistent with generally accepted industry standards and further agrees to cooperate with Northwood's policies and procedures for quality assurance and utilization management. Participating Supplier agrees to perform quality assurance and utilization management review in accordance with the requirements of state and federal law and to participate in any quality assurance or utilization management programs established by Northwood. Participating Supplier recognizes Northwood's right to assure that all quality assurance, utilization management, benefit determination and related administrative services inherent and necessary in a managed health care system comply with applicable state and federal regulatory requirements and applicable legislation. Participating Supplier acknowledges that it may be subject to retroactive denial of payment for Participating Supplier services for which authorization was not obtained and for which authorization was required or where Participating Supplier is informed by Northwood that continued payment is not guaranteed or that Northwood intends to suspend continued authorization based upon quality assurance or utilization management activities conducted by Northwood. Participating Supplier shall comply with all final payment determinations provided by Northwood.

4.7.2    Northwood Obligations. Northwood agrees to perform quality assurance and utilization management services required by law in connection with this Agreement. Northwood acknowledges that the information that it receives as a result of participating in Participating Supplier's quality assurance and utilization management activities is made confidential under applicable law. Such information is furnished to Northwood solely to assist Northwood in conducting its own professional practice review. Northwood and its employees will maintain the confidentiality of all such information received from Participating Supplier, will use such information only for quality assurance and utilization management purposes, and will resist any attempts by third parties to obtain such information except where disclosure is required by law, this Agreement, or Northwood's Service Agreement.

## V. PAYMENT FOR SERVICES

5.1    Rate of Payment. Upon execution of this Agreement, Northwood, or its nominee, is designated as payee by Participating Supplier. Northwood shall remit an amount to Participating Supplier as set forth in the fee schedule attached hereto as Exhibit B (the "Fee For Service Rate") less any applicable co-pay and/or deductible. Participating Supplier agrees to accept reimbursement as set forth herein as payment in full for Covered Services.

PA-11c
10-26-10
Page 8 of 14

5.2    Payment Terms. Northwood through the Group Service Agreement shall require reimbursement to Northwood within thirty (30) days of receipt by the appropriate Group Service Agreement Claims Administrator of properly submitted claims for Covered Services provided to Covered Persons. Upon receipt of payment by Northwood, Northwood shall submit proper payment to the Participating Supplier within fifteen (15) days thereof.

5.3    Non-Covered Services. In the event a Covered Person requests services which are Non-Covered Services, such Non-Covered Services may be provided by Participating Supplier at the Covered Person's sole cost and expense, provided that Participating Supplier receives a signed release prior to the provision of services from the Covered Person that it will assume responsibility for the cost of the service. Participating Supplier agrees not to charge amounts in excess of its normal and customary charge for such services and shall be under no obligation to furnish services that are not normally and customarily provided by it to other patients of the Participating Supplier. In the event Participating Supplier does not obtain a signed release, Participating Supplier shall hold Northwood and Covered Person harmless. Participating Supplier agrees to cooperate with Northwood in resolving any Covered Person grievances related to the provision of services.

5.4    Claims and Submission. Participating Supplier shall provide Northwood with prompt itemized statements of Covered Services provided to Covered Persons. These statements must comply with billing format HCFA 1500, Northwood-approved electronic format or successor format for professional services. Participating Supplier further agrees to provide Northwood with any additional information reasonably necessary to evaluate the claim and/or other information regarding the services provided.

5.5    Hold Harmless. Participating Supplier shall look only to Northwood for compensation for Covered Services rendered to a Covered Person. Participating Supplier agrees that in no event shall it bill, charge, collect or attempt to collect a deposit from, seek compensation or remuneration from, surcharge or have any recourse against a Covered Person for Covered Services, except that this provision shall not prohibit collection of charges for Non-Covered Services, co-payments or deductibles from the Covered Person by Participating Supplier as defined in the Coordination of Benefits Section of this Agreement. Participating Supplier agrees not to maintain any action at law or in equity against a Covered Person to collect sums that are owed by Northwood, or its designee, to Participating Supplier under the terms of this Agreement, even in the event Northwood, or its designee, fails to pay, becomes insolvent or otherwise breaches the terms and conditions of this Agreement. This Section shall survive termination of this Agreement, regardless of the cause of termination of this Agreement, and shall be construed to be for the benefit of Covered Persons. This Section is not intended to apply to services provided after this Agreement has been terminated, except as otherwise provided in this Agreement, or to apply to Non-Covered Services. Participating Supplier agrees that this provision supersedes any oral or written agreement, hereinafter entered into between Participating Supplier and Covered Person or persons acting on Covered Person's behalf, insofar as such agreement relates to payment for services provided under the terms and conditions of this Agreement.

5.6    Coordination of Benefits. Any reimbursement paid by Northwood under this Agreement shall not affect Northwood's right to proceed against any other insurer, co-insurer, or other third party to recover any payment, co-payment or other monies related to or incident to any claim for Covered Services. Northwood shall make a good faith effort to seek reimbursement for services to Covered Persons pursuant to the law or rules of subrogation or the Plan Sponsor's Coordination of Benefits policy. As appropriate, Participating Supplier shall first seek reimbursement for Covered Services under Titles XVIII, XIX, and/or V of the Social Security Act.

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

## VI. TERM AND TERMINATION

6.1 <u>Term and Termination</u>. This Agreement is effective as of the date indicated above and shall continue for a period of one (1) year (the "Initial Term") and thereafter automatically renew for successive one (1) year terms, unless otherwise terminated as provided herein or unless either Northwood or Participating Supplier gives the other sixty (60) days notice of termination. Following the completion of one (1) year of the Initial Term, either party shall have the right to terminate this Agreement without cause upon sixty (60) days prior written notice to the other.

6.2 <u>Breach of Agreement</u>. In the event that any party hereto materially breaches the terms of this Agreement, the non-breaching parties shall notify the other party of such breach and shall give the breaching party sixty (60) days to cure such breach prior to terminating this Agreement with respect to the breaching party.

6.3 <u>Effect of Termination on Provision of Services</u>. In the event this Agreement is terminated, Participating Supplier will not be obligated to provide services to any Covered Person past the month for which the Fee For Service Rate for such Covered Person will cease for the terminating Participating Supplier, provided that, the Participating Supplier has transferred the responsibility for the ongoing care of Covered Persons in accordance with Section 6.5 of this Agreement. Northwood shall notify the Participating Supplier when payment of the Fee for Service Rate has ceased and shall indicate that Participating Supplier's obligations under this Agreement are no longer required.

6.4 <u>Immediate Termination</u>. Either party may terminate this Agreement immediately upon the occurrence of any of the following events:

a. The other party loses or has suspended or revoked any necessary licensure, or violates any applicable law or regulation;

b. The other party is denied participation in the Medicare or Medicaid program or is terminated or suspended from the Medicare or Medicaid program.

6.5 <u>Continued Obligations Upon Termination</u>. In the event this Agreement is terminated, Participating Supplier obligations shall continue only until the earlier of (i) sixty (60) days after termination or (ii) such time as Northwood has secured an alternative Participating Supplier:

6.5.1 <u>Designating Alternative Participating Supplier</u>. Upon receiving notification from Participating Supplier, Northwood will be responsible for designating the alternative Participating Supplier.

6.5.2 <u>Transfer of Records</u>. Participating Supplier shall transfer the records of all Covered Persons (or a copy thereof produced at Participating Supplier expense) which relate to the provision of Covered Services to alternative Participating Suppliers, as designated by Northwood, and the Participating Supplier shall cooperate in the transition of service including coordination of equipment exchange to assure no interruption of service to Covered Persons.

6.5.3 <u>Utilization and Financial Audits</u>. Participating Supplier shall continue to permit Northwood or its authorized representative to conduct utilization and financial audits in accordance with Section 4.6 of this Agreement relating to the period when this Agreement was in effect.

Document received on 10/30/18 7:55 AM Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

## VII. MISCELLANEOUS

7.1 <u>Independent Contractor Status</u>. Northwood and Participating Supplier shall remain separate and independent, and shall be considered to be independent contractors. No employee of one party shall be considered to be an agent, employee, servant or other representative of the other party because of the terms of this Agreement. Nothing in this Agreement shall be construed to confer upon Northwood any control over the business of Participating Supplier in furnishing equipment and services to any Covered Person, except as set forth in this Agreement.

7.2 <u>Additional Northwood Programs</u>. Participating Supplier agrees to participate in new or additional Northwood programs and benefits when instituted in accordance with the following procedure:

7.2.1 <u>Notification</u>. Northwood may designate new or additional Northwood programs or benefits by notifying Participating Supplier in writing at least thirty (30) days prior to the implementation of such new or additional programs or benefits. Such notification shall include a description of the types of services covered by such programs or benefits and any applicable compensation schedules. Notification shall be in the form of an amendment and must be signed and returned to Northwood by the Participating Supplier within the time frame identified on the notification in order to become effective. Participating Supplier shall be deemed to have agreed to participate in such new or additional programs or benefits pursuant to the terms of this Agreement, this Agreement shall be deemed amended in such respect, and all new Covered Services descriptions and fee schedules shall be annexed to and made a part of Exhibit A and Exhibit B, respectively, of this Agreement. Should Participating Supplier provide Northwood with timely notice of its desire not to participate in such new or additional programs or benefits, Participating Supplier shall have no obligation to participate and this Agreement shall otherwise continue in effect.

7.3 <u>Entire Agreement</u>. This Agreement and the documents referenced herein represent the entire agreement of the parties concerning the subject matter of this Agreement which supersedes all prior written or oral agreements on this subject matter. Except as provided in paragraphs 7.2 and 7.4, no part of this Agreement, including this paragraph, may be amended or supplemented except by an instrument in writing signed by both Northwood and Participating Supplier.

7.4 <u>Amendment</u>. Notwithstanding anything in this Agreement to the contrary, Northwood or Participating Supplier may amend this Agreement if necessary in order to comply with applicable federal or state laws, regulations or guidelines. Such amendments shall be effective fourteen (14) days after written notification to Northwood or Participating Supplier and Northwood or Participating Supplier shall be deemed to have agreed to such amendment unless Northwood or Participating Supplier provides written notice to Northwood or Participating Supplier to the contrary within seven (7) days of Northwood's or Participating Supplier's receipt of notice of the amendment. If Northwood and Participating Supplier are unable to agree to the proposed amendment, either may terminate this Agreement immediately.

7.5 <u>Invalid Provision</u>. If any one or more of the provisions contained in this Agreement should be invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions shall not be in any way affected.

7.6 <u>Governing Law</u>. This Agreement shall be construed in accordance with the laws of the State of Michigan.

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

7.7    Notice.  Any communication or notice under this Agreement shall be made in writing by receipted personal delivery or by certified mail, return receipt requested, prepaid, as follows:

To Northwood:                        To Participating Specialty Supplier:

Northwood, Inc.                      _____
7277 Bernice                         _____
Center Line, Michigan 48015          _____

7.8    Assignment. Neither Northwood nor Participating Supplier shall assign, sell or otherwise transfer its interest in or obligations under this Agreement without the prior written consent of the other.

7.9    Indemnification. Participating Supplier agrees to defend, indemnify, and hold harmless Northwood, its officers, agents, and employees of and from any and all claims, lawsuits, losses, suits, liabilities, and costs arising from Participating Supplier's failure, through negligence, intentional actions or clear error, to perform any of its duties hereunder, including, without limitation, all costs (including actual attorneys fees) of Northwood incurred in defending any such claim. Northwood agrees to defend, indemnify and hold harmless Participating Supplier, its officers, agents and employees of and from any and all claims, lawsuits, losses, suits, liabilities and costs arising from Northwood's failure, through negligence, intentional actions or clear error, to perform any of its duties hereunder, including, without limitations, all costs (including actual attorneys fees) of Participating Supplier incurred in defending any such claim. Northwood and Participating Supplier shall make its best efforts to mitigate damages and minimize legal expenses.

7.10    No Third Party Rights.  Nothing in this Agreement shall be deemed to create any rights in any person or entity not a signatory to this Agreement as a third-party beneficiary or otherwise.

7.11    Waiver. No waiver of any terms of this Agreement, at any time, shall constitute a waiver of the same term at a later time.  No failure to assert any remedy upon a breach under this Agreement at any time shall prohibit any party from asserting all of its rights and remedies in the event of a subsequent breach of the same, similar or different character.

7.12    Remedies.  Each of the remedies provided for in this Agreement shall be cumulative, and none shall be exclusive of any other remedies provided under this Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Agreement on the day and year first above written.

WITNESSES:                           NORTHWOOD, INC.

_____             By: _____

Its: _____        Its: _____Kenneth G. Fasse_____

Date: _____       Date: _____

                                     PARTICIPATING SUPPLIER

_____             By: _Clinical Wound Solutions, LLC_

Its: _____        Its: _Eric A Lane_

Date: _____       Date: _7-30-15_

PA-11c
10-26-10
Page 12 of 14

EXHIBIT A

The standard set of covered services for Plan Sponsors typically includes home care products and services covered by the Federal Medicare Program. Specific information and details concerning covered services shall be provided through Northwood to Participating Suppliers per each Plan Sponsor.

Covered Services may vary from Plan to Plan. Orders placed with Northwood's Home Management Plus Program will be verified with the Plan unless otherwise indicated on a Northwood authorization/referral which is forwarded to the Participating Supplier. Coverage determination for orders placed directly with the Provider should be obtained by contacting Northwood.

Document received on 10/30/18 7:55 AM   Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

Document received on 10/30/18 7:55 AM Document accepted on 10/30/2018 08:29:23 // 4394367/17043109519l

PA-11c
10-28-10
Page 14 of 14

FEE SCHEDULE

EXHIBIT B



# Northwood

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement"), effective _July 30 2015_ ("Effective Date"), is entered into by and between Northwood, Inc., and _Clinical Wand Solutions_ (Business Associate). _LLC_

### Definitions

    (a) Business Associate. "Business Associate" shall mean [Insert Name of Business Associate].

    (b) Individual. "Individual" shall mean the same as "individual" in 45 CFR 164.501 and shall include a person who qualifies as a personal representative in accordance with 45 CFR 164.502(g).

    (c) Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR part 160 and part 164, subparts A and E.

    (d) Protected Health Information (PHI). "Protected Health Information" shall mean the same as "protected health information" in 45 CFR 164.501, limited to the information created or received by Business Associate from or on behalf of Northwood, Inc.

    (e) Required By Law. "Required By Law" shall mean the same as "required by law" in 45 CFR 164.501.

    (f) Secretary. "Secretary" shall mean the Secretary of the Department of Health and Human Services (DHHS) or his designee.

### Obligations and Activities of Business Associate

(a) Permitted Uses and Disclosures: Business Associate shall not use or disclose PHI other than as permitted or required by the Agreement or as Required By Law.

(b) Safeguards: Business Associate shall use appropriate safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement.

(c) Mitigation: Business Associate shall mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.

(d) Report Procedure: Business Associate shall report to Northwood, Inc. of any use or disclosure of the PHI not provided for by this Agreement of which it becomes aware.

Document received on 10/30/18 7:55 AM Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

(e) Agents: Business Associate shall ensure that any agent, including subcontractors, to whom it provides PHI received from (or created or received by Business Associate on behalf of) Northwood, Inc. agrees to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to the PHI.

(f) Access to Information: Business Associate shall provide access to, provide copies of accounts of PHI disclosures according to HIPAA regulations to Northwood, Inc. or an individual as directed by Northwood, Inc., as and when requested for.

(g) Amendments: Business Associate shall amend PHI that Northwood, Inc. directs to or agrees to according to HIPAA regulations.

(h) Availability: Business Associate shall make internal practices, books, records, policies and procedures and PHI, related to use and disclosure of PHI received from (or created or received by Business Associate on behalf of) Northwood, Inc. available to Northwood, Inc. or to the Secretary for HIPAA compliance determination purposes.

(i) Accounting of disclosures: Business Associate shall document disclosures of PHI and information related to disclosures as required by Northwood, Inc. to respond to a request for an accounting of disclosures according to the HIPAA regulations.

**Permitted Uses and Disclosures by Business Associate**

Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI to perform functions, activities, or services for, or on behalf of, Northwood, Inc., provided that such use or disclosure would not violate the HIPAA Privacy regulations.

**Obligations of Northwood, Inc.**

(a) Northwood, Inc. shall notify Business Associate of any changes in, or revocation of, permission by Individual to use or disclose PHI, to the extent that such changes may affect Business Associate's use or disclosure of PHI.

(b) Northwood, Inc. shall notify Business Associate of any restriction by the individual to use or disclosure of PHI, to the extent that such restriction may affect Business Associate's use or disclosure of PHI.

**Permissible Requests by Northwood, Inc.**

Northwood, Inc. shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule.

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

**Term and Termination**

(a) Term. The Term of this Agreement shall be effective as of April 14th, 2003 and shall terminate when all of the PHI provided by Northwood, Inc. to Business Associate, or created or received by Business Associate on behalf of Northwood, Inc., is destroyed or returned to Northwood, Inc., or the protections are extended to such information, in accordance with the termination provisions in this Section.

(b) Termination for Cause. Upon Northwood, Inc. knowledge of a material breach by Business Associate, Northwood, Inc. shall provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement and any other agreements.

(c) Effect of Termination. Except as provided in following paragraph of this section, upon termination of this Agreement, for any reason, Business Associate shall return or destroy all PHI received from Northwood, Inc., or created or received by Business Associate on behalf of Northwood, Inc. This provision shall apply to PHI that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the PHI.

In the event that Business Associate determines that returning or destroying the PHI is infeasible, Business Associate shall provide to Northwood, Inc. notification of the conditions that make return or destruction infeasible.

Other Terms

(a) Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.

(b) Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Northwood, Inc. to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act of 1996.

(c) Survival. The respective rights and obligations of Business Associate under "Effect of Termination" shall survive the termination of this Agreement.

(d) Interpretation. Any ambiguity in this Agreement shall be resolved to permit Northwood, Inc. to comply with the Privacy Rule.

Intending to be legally bound, the entities hereto have caused this Agreement to be executed by their duly authorized representatives.

BUSINESS ASSOCIATE                          NORTHWOOD, INC.
(Insert Name)

By Clinical Wound Solutions, LLC By: _____

Name: Eric A Lane                    Name: ____Kenneth G. Fasse____

Title: Executive Vice President Title: _____President_____

Date: 7-30-15                        Date: _____

PA-19
06-24-09                             Page 3 of 3

**ATTACHMENT #1**

SUBCONTRACTOR AFFILIATION ACKNOWLEDGMENT
TO
NORTHWOOD, INC.'s
SECURITY HEALTH PLAN OF WISCONSIN, INC.
VENDOR AFFILIATION AGREEMENT

This Acknowledgement is effective as of the 1st day of July, 2015 ("Effective Date") by and among Security Health Plan of Wisconsin, Inc. (SHP), Northwood, Inc. (Vendor) and Clinical Wound Solutions, LLC (Subcontractor), a qualified supplier of durable medical equipment, prosthetics, orthotics and medical supplies (DMEPOS).

WHEREAS, SHP, a nonprofit service insurance corporation and health maintenance organization licensed by the State of Wisconsin, wishes to secure the ongoing availability of Covered Services to its Members and to ensure ongoing compliance with applicable regulatory and certification provisions.

WHEREAS, Vendor has entered into a SHP Vendor Affiliation Agreement (Agreement) to provide Covered Services, as specifically defined in the Agreement, to SHP enrollees ("Members"); and

WHEREAS, Subcontractor is a hospital, institution, facility, group or individual practitioner which has entered into a Participating Supplier Agreement ("Subcontract") with Vendor to provide durable medical equipment, prosthetic, orthotic and medical supplies (DMEPOS) and services to SHP Members; and

NOW, THEREFORE, the parties agree as follows:

A. **Term of Acknowledgment** -- This Acknowledgment shall run concurrently with Vendor's SHP Utilization Management Agreement. Upon the effective date of this Acknowledgment, any previously existing direct contract between Subcontractor and SHP for the provision of Covered Services shall be suspended during the term of the Agreement and this Acknowledgment. All terms and conditions of the Agreement shall apply with respect to this Acknowledgment except as specifically invalidated or superseded herein.

B. **Payment** -- Subcontractor acknowledges and agrees that it will be paid by Vendor for Covered Services in accordance with the term of the Subcontract at Vendor's fee schedule attached harto as 'Northwood SHP DMEPOS/ Home Infusion Fee Schedule 14/233'.

C. **Member Hold-Harmless** - Except in the event that Member has primary coverage with another carrier or third party payer and except for applicable Copayments/Coinsurance or Deductibles, Subcontractor agrees to look solely to Vendor for Covered Services rendered under the Agreement and Subcontract, and to accept payment made in accordance with the Subcontract as payment in full. Subcontractor will in no event, including but not limited to nonpayment, insolvency or breach of the Subcontract, bill, charge, collect a deposit from, seek payment from, maintain any action at law or in equity or have any other recourse against a Member or person (other than Vendor or TPA) acting on behalf of Member for Covered Services provided pursuant to the Agreement and Subcontract. This provision does not prohibit Subcontractor from collecting charges for supplemental benefits or Copayments/Coinsurance or Deductibles, where appropriate,

PA-49 SHP
01-13-15

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:33 # 4394367/170431095191

or for non-Covered Services delivered to Members on a fee-for-service basis. This provision shall survive termination of the Agreement and/or Subcontract for Covered Services rendered prior to termination regardless of the cause giving rise to such termination and shall be construed to be for the benefit of the Member. This provision supersedes any oral or written agreement to the contrary now existing or hereafter entered into between Vendor or Subcontractor and Member or person acting on Member's behalf, insofar as such contrary agreement relates to liability for payment of Covered Services provided under the Agreement and Subcontract.

D. General – Subcontractor has reviewed and is familiar with Vendor's SHP Utilization Management Agreement. Subcontractor is aware of Vendor's responsibilities under the Agreement and agrees to fully aid and support the fulfillment of such responsibilities. Subcontractor agrees to be bound by and accept the applicable terms and conditions of the Agreement, the Subcontract, all Northwood policies and procedures, this Acknowledgement and all amendments or modifications thereto.

E. Medicare Advantage Provisions

1. Medicare Advantage Member or MA Member - A Member who is eligible for Medicare and who is enrolled with SHP under a contract (Medicare Advantage Contract) between SHP and the Center for Medicare and Medicaid Services (CMS) of the U.S. Department of Health and Human Services (HHS).

2. Medical Records – Subcontractor shall maintain accurate and timely medical records for Members treated by Subcontractor in accordance with all Federal and state laws and regulations regarding confidentiality and disclosure of Member health information and in a manner which safeguards the privacy of any information which may identify a particular Member. Medical Records for Members shall be maintained for at least ten (10) years after the final date of this Amendment or completion of audit, whichever is later.

3. Access to Records – Subcontractor shall permit HHS, the Comptroller General, or their designees to audit, evaluate, or inspect any books, contracts, medical records, patient care documentation, and other records that pertain to any aspect of services performed, reconciliation of benefit liabilities, and determination of amounts payable for MA Members. Subcontractor shall provide such information to SHP within ten (10) days from the date of request or as shall be necessary to comply with reporting requirements established by CMS. Such access shall be permitted for up to ten (10) years after the final date of this Amendment or completion of audit, whichever is later.

4. Nondiscrimination - Subcontractor shall provide Covered Services to MA Members in the same manner, quality and promptness as services are provided to Subcontractor's other patients. Subcontractor shall provide Covered Services in a manner consistent with professionally recognized standards of health care. Subcontractor shall provide Covered Services in a culturally competent manner to MA Members of different cultural and ethnic backgrounds. Subcontractor shall not discriminate against any MA Member on the basis of membership in SHP, source of payment, sex, age, race, color, religion, national origin or any factor related to health status, including but not limited to medical condition, claims experience, receipt of health care, medical history, genetic information, evidence of insurability, disability or handicap, or any basis prohibited by federal law in providing Covered Services under the Subcontract.

PA-89 SHP
11/13/12

Page 2 of 7

5.  MA Member Hold-Harmless - Except in the event that MA Member has primary coverage with another carrier or third party payer and except for applicable copayments/coinsurance or deductibles, Subcontractor agrees to look solely to SHP, through Vendor, for payment for Covered Services rendered under this Agreement and to accept payment made in accordance with the Subcontract as payment in full. Subcontractor will in no event, including but not limited to nonpayment, insolvency or breach of the Agreement and/or Subcontract, bill, charge, collect a deposit from, seek payment from, maintain any action at law or in equity or have any other recourse against a MA Member or person (other than Vendor) acting on behalf of Member for Covered Services provided pursuant to the Agreement. This provision does not prohibit Subcontractor from collecting charges for supplemental benefits or copayments/coinsurance or fees or reasonable deductibles, where appropriate, or for non-Covered Services delivered on a fee-for-service basis to MA Members who are informed in advance of their payment responsibility and the estimated charges. This provision shall survive termination of the Agreement and/or Subcontract for Covered Services rendered prior to termination regardless of the cause giving rise to such termination and shall be construed to be for the benefit of the Member. This provision supersedes any oral or written agreement to the contrary now existing or hereafter entered into between Subcontractor and MA Member or person acting on Member's behalf, insofar as such contrary agreement relates to liability for payment of Covered Services provided under the Agreement and Subcontract.

6.  Obligations of Recipients of Federal Funds – Subcontractor acknowledges that payments to Subcontractor pursuant to the Subcontract are made, in whole or in part, from federal funds and that the Agreement and Subcontract are subject to all laws applicable to entities and individuals receiving federal funds. Subcontractor shall comply with all requirements of laws applicable to recipients of federal funds, including Title VI of the Civil Rights Act of 1964, the Age Discrimination Act of 1975, the Rehabilitation Act of 1973, and the Americans with Disabilities Act.

7.  Delegated Responsibilities – Subcontractor and any subcontractor or other downstream entity (delegate) to which Subcontractor delegates responsibilities under its Subcontract with Vendor shall perform such responsibilities on behalf of MA Members in accordance with applicable federal laws, regulations, HHS instructions and requirements set forth in the Medicare Advantage Contract. SHP shall be responsible for overseeing and is ultimately accountable for the performance of Subcontractor and delegates with regard to delegated responsibilities described in this Section. If Subcontractor or delegate fails to perform delegated services, reporting or disclosure responsibilities in a satisfactory manner, SHP shall retain the right to terminate this Amendment in accordance with Termination for Cause provisions set forth herein. To the extent that Subcontractor delegates responsibilities under its Subcontract, the following specifications or provisions shall be incorporated into its written agreements with such delegates:

    a)  A description of the delegated activities and reporting responsibilities;

    b)  A provision for the revocation of delegated activities and reporting requirements or other appropriate remedies in the event that CMS or SHP determines the delegate's performance is unsatisfactory;

    c)  Specification that the delegate's performance is monitored by SHP on an ongoing basis;

Document received on 10/30/18 7:55 AM   Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

d) Specification that credentials review process for all medical professionals affiliated with the delegate will be conducted by SHP or reviewed and approved by SHP and audited by SHP on an ongoing basis;

e) A specification that the delegate must comply with all applicable federal laws, regulations and HHS instructions.

SHP shall retain the right to approve, suspend or terminate all such delegated arrangements.

8. **Privacy and Accuracy of Records** – Subcontractor agrees to safeguard beneficiary privacy and confidentiality and assure the accuracy of beneficiary health records. 42 CFR 422.504(a)13.

9. **Compliance with SHP's contractual obligations** – Subcontractor agrees that services performed under the Agreement will be consistent and comply with SHP's contractual obligations with CMS. 42 CFR 422.504(i)(3)(iii).

10. **Selection of Providers** – To the extent SHP delegates the selection of Subcontractors to Vendor, SHP retains the right to approve, suspend, or terminate such arrangement. 42 CFR 422.504(i)(5).

11. **Delegation** – SHP may only delegate activities or functions to Subcontractor in a manner consistent with CMS rules and regulations.

12. **Medical Management and Quality Improvement Program** – As applicable, Subcontractor shall participate in SHP's quality improvement, performance improvement, and/or medical management programs. Subcontractor shall also participate in CMS and the U.S. Department of Health and Human Services ("HHS") quality improvement initiatives. To the extent applicable in connection with Subcontractor's administration or delivery of prescription drug benefits under Part D of SHP's Medicare Advantage Program, Subcontractor shall cooperate with SHP's quality assurance, drug utilization management and medication therapy management programs, and shall support e-prescribing.

13. **Claims Adjudication** – Covered Services provided to MA Members shall be paid by SHP to Vendor at the rates described in Exhibit #10 to the Agreement. Vendor shall make timely distribution of payment to Subcontractor in accordance with the terms of the Subcontract.

14. **Encounter/Claims Data** – Upon request by SHP or Vendor, Subcontractor shall provide SHP or Vendor with all data necessary to characterize the context and purposes of each encounter between Subcontractor and MA Member and to facilitate claims adjudication in accordance with applicable CMS encounter reporting requirements.

15. **Continuation of Benefits** – Subcontractor agrees that, even in the event of insolvency or other cessation of operations by SHP or Vendor, Subcontractor will continue to provide Covered Services to MA Members through the period for which Members' applicable premium has been paid and, for MA Members confined to an inpatient facility, the end of the period for which Member's applicable premium has been paid or the date of Member's discharge, whichever is later. This requirement applies only to supplies being furnished by Subcontractor at the time of the termination or

Document received on 10/30/18 7:55 AM Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

insolvency. This provision supersedes any oral or written agreement to the contrary now existing or hereafter entered into between Subcontractor and MA Member or person acting on Member's behalf, insofar as such contrary agreement relates to liability for payment of Covered Services provided under this continuation of benefits provision.

16. **Non-Interference** – Nothing in this Agreement shall be construed to prohibit or otherwise restrict Subcontractor from advising or advocating on behalf of a MA Member about Member's health status, medical care, or treatment options; the risks, benefits, and consequences of treatment or non-treatment; or the opportunity for Member to refuse treatment or to express preferences about future treatment decisions.

17. **Adverse Actions**

   a) **No Adverse Actions or Investigations** – Subcontractor asserts that, to the best of its knowledge, information and belief, there are no pending investigations, legal actions, or matters subject to arbitration involving Subcontractor or any key management, executive staff, or any major shareholder (5% or more) of Subcontractor on matters relating to payments from governmental entities, both federal and state, for healthcare and/or prescription drug services.

   b) **No Criminal Convictions or Civil Judgments** – Subcontractor asserts that, to the best of its knowledge, information and belief, Subcontractor has not been criminally convicted or had a civil judgment entered against it for fraudulent activities, nor has Subcontractor been sanctioned under any Federal program involving the provision of heath care or prescription drug services.

   c) **No Excluded Or Debarred Individuals** – Subcontractor asserts that, to the best of its knowledge, information and belief, neither Subcontractor nor any key management, executive staff, or any major shareholder (5% or more) of Subcontractor appears on the List of Excluded Individuals/Entities as published by the Department of Health and Human Services Office of the Inspector General, nor on the List of Debarred Contractors as published by the System for Award Management. The Department of Health and Human Services Office of the Inspector General List of Excluded Individuals/Entities can be accessed on line at the following website: http://oig.hhs.gov/fraud/exclusions/database.html. The System for Award Management List of Debarred Contractors can be found at https://www.sam.gov/.

   d) **Notice of Change of Circumstances** – Subcontractor is obligated to notify Vendor immediately of any change in circumstances occurring after the Effective Date of this Attachment #1 which would require a modified response to paragraphs 1–3 above.

18. **Mandated Amendments** – Amendments to the Agreement which are required because of legislative, regulatory or legal requirements; or are due to modifications required by the Wisconsin Office of the Commissioner of Insurance do not require the prior approval of Vendor or Subcontractor, and shall become effective upon written notification of Vendor by SHP. Upon receipt of notice from SHP of such amendment, Vendor shall promptly notify Subcontractor of such amendment, and

Document received on 10/30/18 7:55 AM Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

Vendor shall modify the Subcontract Agreement as is necessary to effect the amendment.

19. **Term and Termination** – This Acknowledgement shall exist concurrently with the Agreement and SHP's Medicare Advantage Contract and shall expire upon termination of either contract. Subject to Continuation of Benefits provisions set forth herein, this Acknowledgement may be terminated without otherwise affecting continuation of the Agreement:

a) **Termination.** This Acknowledgement may be terminated as provided in Section 9.5 of the Agreement.

b) **Automatic Termination** – This Acknowledgement shall terminate automatically and immediately in the event that Subcontractor is debarred or excluded from or opts out of participation in the Medicare program or SHP or Vendor reasonably believes that such termination is necessary to protect the health or safety of SHP members, including MA Members. In such case, Vendor or SHP may immediately take steps to transfer Member to the care of another qualified Affiliated Subcontractor.

[Signature page to follow]

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

SECURITY HEALTH PLAN OF
WISCONSIN, INC.

By: _____  By: _____
   (Signature)                        (Signature)

By: __Julie J. Brussow__            By: __Kenneth G. Fasse__
    ~~CEO~~
Its: ~~Interim Chief Administrative Officer~~   Its: __President__

Date: __8-17-2015__                 Date: __8/7/15__


VENDOR SUBCONTRACTOR

By: _____
   (Signature)

By: __Eric A. Lone__
    (Name, Type or Print)

Its: __Executive VP__
    (Title)

Date: __8-5-15__

Document received on 10/30/18 7:55 AM  Document accepted on 10/30/2018 08:29:23 # 4394367/170431095191

**EXHIBIT B**

**Clinical Wound Solutions, LLC**

1084 Industrial Drive, Unit 5
Bensenville IL 60106

DEC 2 1 2020

🖱 Pay online at:
https://cwsmeds.hmebillpay.com

Account Number:
**18675**

Patient Name:

**Final Demand**

Dec 10, 2020

### Past Due Summary

| INVOICE # | DATE OF SERVICE | BALANCE |
|---|---|---|
| 15522 | 10/24/2016 | $1731.17 |

| | |
|---|---|
| Late Fee | $20.00 |
| **TOTAL PAST DUE:** | **$1751.17** |

Responsible Party:

**TOTAL DUE**

| Current | Past Due | Ready for Collections | |
|---|---|---|---|
| $0.00 | $1751.17 | $0.00 | **$1751.17** |

Dear

We have not received payment for the balance shown. We must now make a decision to forward your account to an attorney or collection agency for resolution.

It is your responsibility to contact us within 10 days of this letter to prevent your account from being forwarded to an attorney or collection agency. To avoid further action please make payment in full immediately.

Sincerely,
Clinical Wound Solutions, LLC

🖱 **Billing Questions**
**(866) 964-6337**

Monday - Friday
8:00 am - 5:00 pm
CST

🖱 Pay online at:

**https://cwsmeds.hmebillpay.com**

140421-PDS-1-L4-2-50908-48114

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456



Cards Accepted
VISA
DISCOVER

Pay now: **$1751.17**

| Card Number | | Amount Enclosed | |
|---|---|---|---|
| Expiration Date | Security Code | Billing Zip Code | |
| Name On Card (print) | | Signature | |

Account #: 18675 Invoice(s): 15522



Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106

1 of 1

OCT 2 9 2020

October 27, 2020

To Whom This May Concern:

Per our conversation this morning with a very nice lady ████████
I am sending copies of a bill in the amount of $715.86 dating
way back to April 11th 2017, from Clinical Wounds Solutions LLC.
P.O. Box 1259 Dept. # 140416/ Oaks, PA. 19456.   Payments are to
be mailed to Clinical Wounds Solutions LLC/ 1084 Industrial
Drive, Unit # 5/ Bensenville, IL. 60106.   I have been instructed
by Tracie to disregard this bill. I and ████████ plan on doing
just that.   ██████████ account # with them is 19622 and the Invoice
# is 12980.  It was originally due the 12th of October of this year.
It is now past due, and in fifteen days theywont to start charging
us interest on the $715.86.   I do hope you get things straighten-
ed out with them.

Sincerely Yours,





NEW

# Patient Portal



- Register and manage your account online
- View and pay invoices securely
- Track your payments

Pay online at:
https://cwsmeds.hmebillpay.com

---

## Important Messages

- Any insurance provided has been applied, please reference your EOB.
- The balance shown is your responsibility.
- A service charge may apply if payments are late.

---

## Insurance on File

Northwood, Inc

Forward Health

---

## Billing Questions
**(866) 964-6337**

Monday - Friday
8:00 am - 5:00 pm
CST

140121 M04A1 50000 00025

---

# Clinical Wound Solutions, LLC

1084 Industrial Drive, Unit 5
Bensenville IL  60106

OCT 2 9 2020

Pay online at: https://cwsmeds.hmebillpay.com

**Account Number:**
19622

**Patient Name:**

**Due by:**
## Oct 12, 2020
**Patient owes:**
## $715.86

Date Mailed: Sep 22, 2020

**Invoice** 18980

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 04/11/2017 | | $715.86 |
| | Total: | $715.86 |



Virginia out on Admin Leave
only one handling ___ is Act.

Now Stephanie (Manager)

_____ )  10-27-20

| | Invoice Total | | Previously Billed | | Total Due |
|---|---|---|---|---|---|
| | **$715.86** | | **$0.00** | | **$715.86** |

---

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456

Cards Accepted

VISA

DISCOVER

**Late after:** Oct 12, 2020    **Patient owes:** $715.86

Card Number

Expiration Date

Name On Card

Security Code

Amount Enclosed

Billing Zip Code

Signature

Account #: 19622 Invoice(s):  18980

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106

**Clinical Wound Solutions, LLC**

1084 Industrial Drive, Unit 5
Bensenville IL 60106



**Past Due**

Oct 20, 2020

OCT 2 9 2020

### Past Due Summary

| INVOICE # | DATE OF SERVICE | BALANCE |
|---|---|---|
| 18980 | 04/11/2017 | $715.86 |

TOTAL PAST DUE:   $715.86

Pay online at:
https://cwsmeds.hmebillpay.com

Account Number:
19622

Patient Name:

**Responsible Party:**

| Current | Past Due | Ready for Collections | TOTAL DUE |
|---|---|---|---|
| $0.00 | $715.86 | $0.00 | **$715.86** |

Dear

This is a friendly reminder that the balance shown is now past due. Any insurance coverage that you have provided to us has been applied and the balance due is your responsibility. If there is a concern with the charges, please call us so we can assist you.

If payment is not received within 15 days, a service charge will be added to your bill.

If payment has already been made, please disregard this notice. Thank you for allowing us to be of service to you.

Sincerely,
Clinical Wound Solutions, LLC

**Billing Questions**
(866) 964-6337

Monday - Friday
8:00 am - 5:00 pm
CST

Pay online at:
https://cwsmeds.hmebillpay.com

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456



**Cards Accepted**

VISA

Pay now: **$715.86**

Card Number

Amount Enclosed

Expiration Date

Security Code

Billing Zip Code

Name On Card 3000

Signature

Account #: 19622 Invoice(s): 18980

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106



**NEW**
# Patient Portal



- Register and manage your account online
- View and pay invoices securely
- Track your payments

## Clinical Wound Solutions, LLC

1084 Industrial Drive, Unit 5
Bensenville IL 60106

OCT 15 2020

Pay online at: https://cwsmeds.hmebillpay.com

Account Number:
**16545**

Patient Name:

Due by:
**Oct 12, 2020**

Patient owes:
**$794.50**

Date Mailed: Sep 22, 2020

**Pay online at:**
https://cwsmeds.hmebillpay.com

### Invoice 33242

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/12/2018 | | $108.00 |
| 02/12/2018 | | $52.00 |
| 02/12/2018 | | $108.00 |
| | Total: | $268.00 |

### Invoice 37566

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/05/2018 | | $526.50 |
| | Total: | $526.50 |

### Important Messages

- Any insurance provided has been applied, please reference your EOB.
- The balance shown is your responsibility.
- A service charge may apply if payments are late.

### Insurance on File

Northwood, Inc

### Billing Questions
**(866) 964-6337**

Monday - Friday
8:00 am - 5:00 pm
CST

| Invoice Total | Previously Billed | Total Due |
|---|---|---|
| $794.50 | $0.00 | $794.50 |

140421-MINV-1-50356-3602

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456



| Cards Accepted | Late after: **Oct 12, 2020** | | Patient owes: **$794.50** |
|---|---|---|---|
| VISA | Card Number | | Amount Enclosed |
| | Expiration Date | Security Code | Billing Zip Code |
| DISCOVER | Name On Card | | Signature |

Account #: 16545 Invoice(s): 33242 37566

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106



I'm sending this bill because it was not paid for but was OK. Clinical Wound Solutions stated they didn't get payment.





OCT 2 6 2020



**NEW**

## Patient Portal

- Register and manage your account online
- View and pay invoices securely
- Track your payments

Pay online at:
https://cwsmeds.hmebillpay.com

### Important Messages

- Any insurance provided has been applied, please reference your EOB.
- The balance shown is your responsibility.
- A service charge may apply if payments are late.

### Insurance on File

Northwood, Inc

### Billing Questions
**(866) 964-6337**

Monday - Friday
8:00 am - 5:00 pm
CST

140421-MINV-1-60926-22846

**Clinical Wound Solutions, LLC**

1084 Industrial Drive, Unit 5
Bensenville IL 60106

Pay online at: https://cwsmeds.hmebillpay.com

Account Number:
22211

Patient Name:

**Due by:**
**Oct 12, 2020**

Patient owes:
**$677.80**

Date Mailed: Sep 22, 2020



**Invoice 39078**

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/16/2018 | | $223.08 |
| 07/16/2018 | | $54.00 |
| 07/16/2018 | | $35.20 |
| 07/16/2018 | | $108.00 |
| | Total: | $420.28 |

**Invoice 39445**

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/30/2018 | | $257.52 |
| | Total: | $257.52 |

| Invoice Total | Previously Billed | Total Due |
|---------------|-------------------|-----------|
| $677.80 | $0.00 | $677.80 |

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456

Cards Accepted
**VISA**

**Late after: Oct 12, 2020**

Patient owes: **$677.80**

| Card Number | | Amount Enclosed |
| Expiration Date | Security Code | Billing Zip Code |
| Name On Card | | Signature |

Account #: 22211 Invoice(s): 39078 39445

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106



## Clinical Wound Solutions, LLC

1084 Industrial Drive, Unit 5
Bensenville IL 60106

**Payment Required Now**

Oct 29, 2020

### Past Due Summary

| INVOICE # | DATE OF SERVICE | BALANCE |
|-----------|-----------------|---------|
| 40538 | 08/27/2018 | $313.20 |
| 40907 | 09/10/2018 | $188.34 |

Pay online at:
https://cwsmeds.hmebillpay.com

DEC 21 2020

Account Number:
22412

Patient Name:

| | Late Fee | $20.00 |
|---|---|---|
| | **TOTAL PAST DUE:** | **$521.54** |

**Responsible Party:**

| Current | Past Due | Ready for Collections | TOTAL DUE |
|---------|----------|------------------------|-----------|
| $0.00 | $521.54 | $0.00 | **$521.54** |

Dear

We still have not received payment for the balance shown. If you don't agree with the balance due, please contact us at (866) 964-6337. Otherwise please send your payment today.

To avoid further collection activity, please ensure that payment is received at the address below within 10 days of the date of this letter. Thank you for allowing us to be of service to you.

Sincerely,
Clinical Wound Solutions, LLC

**Billing Questions**
(866) 964-6337

Monday - Friday
8:00 am - 5:00 pm
CST

Pay online at:

https://cwsmeds.hmebillpay.com

140421-PDS-142-50328-35660

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456

Cards Accepted
VISA
DISCOVER

**Pay now:** **$521.54**

| Card Number | | Amount Enclosed |
| Expiration Date | Security Code | Billing Zip Code |
| Name On Card (print) | | Signature |

Account #: 22412 Invoice(s): 40538 40907

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106



1 of 1

# Clinical Wound Solutions, LLC

1084 Industrial Drive, Unit 5
Bensenville IL 60106

**Final Demand**

Dec 03, 2020

DEC 14 2020

Pay online at:
https://cwsmeds.hmebillpay.com

## Past Due Summary

| INVOICE # | DATE OF SERVICE | BALANCE |
|---|---|---|
| 659 | 06/28/2016 | $363.48 |
| 7830 | 08/17/2016 | $185.92 |
| 16518 | 02/28/2017 | $599.12 |
| 16710 | 03/02/2017 | $268.64 |
| 21022 | 05/18/2017 | $697.20 |
| 25408 | 08/10/2017 | $697.20 |
| 31964 | 01/11/2018 | $389.64 |
| | Late Fee | $20.00 |
| | TOTAL PAST DUE: | $3221.20 |

Account Number
17468

Patient Name:

Responsible Party:

| Current | Past Due | Ready for Collections | TOTAL DUE |
|---|---|---|---|
| $0.00 | $3221.20 | $0.00 | $3221.20 |

Dear

We have not received payment for the balance shown. We must now make a decision to forward your account to an attorney or collection agency for resolution.

It is your responsibility to contact us within 10 days of this letter to prevent your account from being forwarded to an attorney or collection agency. To avoid further action please make payment in full immediately.

Sincerely,
Clinical Wound Solutions, LLC

Billing Questions
(866) 964-6337

Monday - Friday
8:00 am - 8:00 pm
CST

Pay online at:

https://cwsmeds.hmebillpay.com

---

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1269 Dept # 140418
Oaks, PA 19456






Cards
Accepted

VISA

Pay now $3221.20

| Card Number | | Amount Enclosed |
| Expiration Date | Security Code | Billing Zip Code |
| Name on Card | | Signature |

Account #: 17468 Invoice(s): 659 7830 16518 16710 21022

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106



**NEW**

· Register and manage your account online
· View and pay invoices securely
· Track your payments



Pay online at:
https://cwsmeds.hmebillpay.com

 **Important Messages**

  » Any insurance provided has been applied, please reference your EOB.
  » The balance shown is your responsibility.
  » A service charge may apply if payments are late.

**Insurance on File**

Northwood, Inc

**Billing Questions**
**(866) 964-6337**

Monday - Friday
8:00 am - 5:00 pm
CST

---

## Clinical Wound Solutions, LLC

1084 Industrial Drive, Unit 5
Bensenville IL 60106

OCT 0 9 2020

Pay online at: **https://cwsmeds.hmebillpay.com**

**Account Number:**
20446

**Due by:**
**Oct 05, 2020**

**Patient Name:**

**Patient owes:**
**$123.60**

Date Mailed: Sep 15, 2020

**Invoice: 24798**

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/02/2017 | | $108.00 |
| 08/02/2017 | | $15.60 |
| | Total: | $123.60 |

| Invoice Total | Previously Billed | Total Due |
|---------------|-------------------|-----------|
| $123.60 | $0.00 | $123.60 |

1-0421-MINV-1-$0520-31108

---

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456

**Cards Accepted**
VISA

not va

**Late after: Oct 05, 2020**   **Patient owes: $123.60**

| Card Number | | Amount Enclosed |
| Expiration Date | Security Code | Billing Zip Code |
| Name On Card (print) | | Signature |

Account #: 20446 Invoice(s): 24798

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106

1 of 1



DEC 1 4 2020

**Clinical Wound Solutions, LLC**

1084 Industrial Drive, Unit 5
Bensenville IL 60106



Pay online at: https://cwsmeds.hmebillpay.com

**Account Number:**

22571

**Patient Name:**

· Register and manage your account online
· View and pay invoices securely
· Track your payments

**Due by:**

**Oct 05, 2020**

**Patient owes:**

**$673.86**

Pay online at:
https://cwsmeds.hmebillpay.com

Date Mailed: Sep 15, 2020

**Important Messages**

- Any insurance provided has been applied, please reference your EOB.
- The balance shown is your responsibility.
- A service charge may apply if payments are late.



**Invoice 41525**

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 09/28/2018 | | $128.76 |
| 09/28/2018 | | $545.10 |
| | Total: | $673.86 |

**Insurance on File**

Northwood, Inc

**Billing Questions**
(866) 964-6337

Monday - Friday
8:00 am - 5:00 pm
CST

| Invoice Total | Previously Billed | Total Due |
|---------------|-------------------|-----------|
| $673.86 | $0.00 | $673.86 |

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456

**Late after: Oct 05, 2020**

**Patient owes: $673.86**

Cards Accepted
VISA

| Card Number | | Amount Enclosed | |
|-------------|--|-----------------|--|
| Expiration Date | Security Code | Billing Zip Code | |
| Name On Card | | Signature | |

Account #: 22571 Invoice(s): 41525

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106






**Clinical Wound Solutions, LLC**

1084 Industrial Drive, Unit 5
Bensenville IL 60106

DEC 1 4 2020

Pay online at:
https://cwsmeds.hmebillpay.com

22571

**Past Due**

Oct 13, 2020

## Past Due Summary

| INVOICE # | DATE OF SERVICE | BALANCE |
|---|---|---|
| 41525 | 09/28/2018 | $673.86 |

TOTAL PAST DUE: $673.86

Responsible Party:

| Current | Past Due | Ready for Collections | TOTAL DUE |
|---|---|---|---|
| $0.00 | $673.86 | $0.00 | **$673.86** |

Dear

This is a friendly reminder that the balance shown is now past due. Any insurance coverage that you have provided to us has been applied and the balance due is your responsibility. If there is a concern with the charges, please call us so we can assist you.

If payment is not received within 15 days, a service charge will be added to your bill.

If payment has already been made, please disregard this notice. Thank you for allowing us to be of service to you.

Sincerely,
Clinical Wound Solutions, LLC

Billing Questions
**(866) 964-6337**

Monday - Friday
8:00 am - 5:00 pm
CST

Pay online at:

https://cwsmeds.hmebillpay.com

630-236-6580

140121-PDS-1-1.1-2-0026-29052

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address:
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140419
Oaks, PA 19456



| Card Accepted | | Pay now: **$673.86** |
|---|---|---|
| VISA | Card Number | Amount Enclosed |
| | Expiration Date | Security Code | Billing Zip Code |
| | Name On Card (print) | Signature |

Account #: 22571 Invoice(s): 41525

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106

**Clinical Wound Solutions, LLC**

1084 Industrial Drive, Unit 5
Bensenville IL 60106

DEC 1 4 2020

Pay online at:
https://cwsmeds.hmebillpay.com

Account Number:
22571

Patient Name:

**Payment Required Now**

Oct 29, 2020

## Past Due Summary

| INVOICE # | DATE OF SERVICE | BALANCE |
|-----------|-----------------|---------|
| 41525 | 09/28/2018 | $673.86 |
| | Late Fee | $20.00 |
| | TOTAL PAST DUE: | $693.86 |

Responsible Party:

| Current | Past Due | Ready for Collections | TOTAL DUE |
|---------|----------|-----------------------|-----------|
| $0.00 | $693.86 | $0.00 | **$693.86** |

Dear

We still have not received payment for the balance shown. If you don't agree with the balance due, please contact us at (866) 964-6337. Otherwise please send your payment today.

To avoid further collection activity, please ensure that payment is received at the address below within 10 days of the date of this letter. Thank you for allowing us to be of service to you.

Sincerely,
Clinical Wound Solutions, LLC

Billing Questions
(866) 964-6337

Monday - Friday
8:00 am - 5:00 pm
CST

Pay online at:

https://cwsmeds.hmebillpay.com

140421-PDS-1-L2-50928-53536

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1269 Dept # 140416
Oaks, PA 19456



Cards Accepted

VISA

Pay now: **$693.86**

| Card Number | | Amount Enclosed |
| Expiration Date | Security Code | Billing Zip Code |
| Name On Card (text) | | Signature |

Account #: 22571 Invoice(s): 41525

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106



1 of 1

# Clinical Wound Solutions, LLC

1084 Industrial Drive, Unit 5
Bensenville IL 60106

DEC 14 2020

Pay online at:
https://cwsmeds.hmebillpay.com

22571

| | Seriously Past Due | |

Nov 17, 2020

## Past Due Summary

| INVOICE # | DATE OF SERVICE | BALANCE |
|---|---|---|
| 41525 | 09/28/2018 | $673.86 |
| | Late Fee | $20.00 |
| | TOTAL PAST DUE: | $693.86 |

| Current | Past Due | Ready for Collections | TOTAL DUE |
|---|---|---|---|
| $0.00 | $693.86 | $0.00 | **$693.86** |

Dear

Your account remains seriously delinquent. We have not received payment for the balance shown. If payment is not received within 10 days, we will review the account to determine whether to engage a collection agency or attorney to pursue this debt.

Please send payment immediately. If there is a concern with your account, please contact us at (866) 964-6337. Thank you for allowing us to be of service to you.

Sincerely,
Clinical Wound Solutions, LLC

Billing Questions
**(866) 964-6337**

Monday - Friday
8:00 am - 5:00 pm
CST

Pay online at:
https://cwsmeds.hmebillpay.com

140421-P05-1-13-50926-33129

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1269 Dept # 140418
Oaks, PA 19456

Cards
Accepted

VISA

Pay now: **$693.86**

| Card Number | | Amount Enclosed |
|---|---|---|
| Expiration Date | Security Code | Billing Zip Code |
| Name on Card | | Signature |

Account #: 22571 Invoice(s): 41525



Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106

# Clinical Wound Solutions, LLC

1084 Industrial Drive, Unit 5
Bensenville IL 60106

**Final Demand**

Dec 03, 2020

DEC 1 4 2020

Pay online at:
https://cwsmeds.hmebillpay.com

Account Number:
22571

Patient Name:

## Past Due Summary

| INVOICE # | DATE OF SERVICE | BALANCE |
|-----------|-----------------|---------|
| 41525 | 09/28/2018 | $673.86 |
| | Late Fee | $20.00 |
| | **TOTAL PAST DUE:** | **$693.86** |

Responsible Party:

| Current | Past Due | Ready for Collections | TOTAL DUE |
|---------|----------|----------------------|-----------|
| $0.00 | $693.86 | $0.00 | **$693.86** |

Dear

We have not received payment for the balance shown. We must now make a decision to forward your account to an attorney or collection agency for resolution.

It is your responsibility to contact us within 10 days of this letter to prevent your account from being forwarded to an attorney or collection agency. To avoid further action please make payment in full immediately.

Sincerely,
Clinical Wound Solutions, LLC

Billing Questions
(866) 964-6337

Monday - Friday
8:00 am - 5:00 pm
CST

Pay online at:

https://cwsmeds.hmebillpay.com

140421-POS-144-2-50928-2610

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456

| Cards Accepted | Pay now: $693.86 |
|----------------|------------------|
| VISA | |

Card Number | Amount Enclosed

Expiration Date | Security Code | Billing Zip Code

Name On Card | Signature

Account #: 22571 Invoice(s): 41525

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106




OCT 0 7 2020



NEW

# Patient Portal



- Register and manage your account online
- View and pay invoices securely
- Track your payments

○ Pay online at:
https://cwsmeds.hmebillpay.com

---

○ **Important Messages**
- Any insurance provided has been applied, please reference your EOB.
- The balance shown is your responsibility.
- A service charge may apply if payments are late.

---

○ **Insurance on File**

Northwood, Inc

---

○ **Billing Questions**
(866) 964-6337

Monday - Friday
8:00 am - 5:00 pm
CST

140422-MNNV-1-00078-175

## Clinical Wound Solutions, LLC

1084 Industrial Drive, Unit 5
Bensenville IL 60106

○ Pay online at: https://cwsmeds.hmebillpay.com

| Account Number: | Due by: |
|---|---|
| **16797** | **Oct 05, 2020** |
| Patient Name: | Patient owes: |
| | **$7948.78** |

Date Mailed: Sep 15, 2020

### Invoice 18261

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 03/31/2017 | | $99.12 |
| | Total: | $99.12 |

### Invoice 21935

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/05/2017 | | $99.12 |
| 06/05/2017 | | $218.04 |
| | Total: | $317.16 |

### Invoice 26221

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/29/2017 | | $185.92 |
| 08/29/2017 | | $66.08 |

(Continued On Back)

| Invoice Total | Previously Billed | Total Due |
|---|---|---|
| $7948.78 | $0.00 | $7948.78 |

---

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

Payments not accepted at this address
**Clinical Wound Solutions, LLC**
PO Box 1259 Dept # 140418
Oaks, PA 19456





| Cards Accepted | Late after: **Oct 05, 2020** | Patient owes: **$7948.78** |
|---|---|---|
| VISA | Card Number | Amount Enclosed |
| | Expiration Date | Security Code | Billing Zip Code |
| | Name On Card (print) | Signature |

Account #: 16797 Invoice(s): 18261  21935  26221  29742  30682

Mail Payment to:

Clinical Wound Solutions, LLC
1084 Industrial Drive, Unit 5
Bensenville IL 60106

1 of 2

OCT 0 7 2020

| | | Total: | $252.00 |
|---|---|---|---|

**Invoice 29742**

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 11/09/2017 | ███████████████ | | $198.24 |
| | | Total: | $198.24 |

**Invoice 30882**

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 12/07/2017 | ███████████████ | | $557.76 |
| 12/07/2017 | | | $436.08 |
| 12/07/2017 | | | $198.24 |
| 12/07/2017 | | | $7.80 |
| | | Total: | $1199.88 |

**Invoice 32902**

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 02/01/2018 | ███████████████ | | $198.24 |
| 02/01/2018 | | | $436.08 |
| 02/01/2018 | | | $557.76 |
| | | Total: | $1192.08 |

**Invoice 34117**

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 03/08/2018 | ███████████████ | | $198.24 |
| 03/08/2018 | | | $140.80 |
| | | Total: | $339.04 |

**Invoice 35862**

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 04/19/2018 | ███████████████ | | $198.24 |

PLEASE DETACH HERE AND RETURN BOTTOM PORTION

32902  34117  35862  35860  36101  36669  38087  38387  41170  42384

OCT 0 7 2020

|  |  | Total: | $198.24 |
|---|---|---|---|

**Invoice 35860**

| DATE | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| 04/19/2018 | ██████████████████ |  | $526.50 |
|  |  | Total: | $526.50 |

**Invoice 36101**

| DATE | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| 04/26/2018 | ██████████████████ |  | $99.12 |
|  |  | Total: | $99.12 |

**Invoice 36569**

| DATE | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| 05/09/2018 | ██████████████████ |  | $297.36 |
|  |  | Total: | $297.36 |

**Invoice 38087**

| DATE | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| 06/22/2018 | ██████████████████ |  | $198.24 |
|  |  | Total: | $198.24 |

**Invoice 38387**

| DATE | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| 06/28/2018 | ██████████████████ |  | $792.96 |
|  |  | Total: | $792.96 |

**Invoice 41170**

| DATE | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| 09/14/2018 | ██████████████████ |  | $7.80 |
| 09/14/2018 |  |  | $763.14 |
| 09/14/2018 |  |  | $346.92 |
|  |  | Total: | $1117.86 |

**Invoice 42384**

| DATE | DESCRIPTION |  | AMOUNT |
|---|---|---|---|
| 10/16/2018 | ██████████████████ |  | $10.92 |
| 10/16/2018 |  |  | $346.92 |
| 10/16/2018 |  |  | $763.14 |
|  |  | Total: | $1120.98 |

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I electronically filed the foregoing **COMPLAINT** with the Clerk of the Court using the ECF system which will send notification to all counsel of appearance.

Additionally, I certify that a copy of the foregoing documents was submitted First Class mail to the following:

Clinical Wound Solutions, LLC

1084 Industrial Dr, Bensenville, IL 60106

/s/

10