# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NORTHWOOD, INC.,

        Plaintiff,

v.                                  Case No. 20-13356

CLINICAL WOUND SOLUTIONS, LLC,

        Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Northwood, Inc., brings this action for breach of contract against Defendant Clinic Wound Solutions, LLC. (ECF No. 1.) Plaintiff is a third-party administrator of health insurance policies. It alleges that Defendant, a medical supplies provider, breached its contract with Plaintiff by billing patients directly. (*Id.*, PageID.5-6.)

Plaintiff has filed a motion for preliminary injunction asking that the court enjoin Defendant from billing patients in violation of the parties' contract. (ECF No. 2.) Defendant did not file a response. The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, Plaintiff's motion will be granted.

## I.  BACKGROUND

Plaintiff is a third-party administrator of health insurance plans. (ECF No. 2, PageID.60.) As its business, Plaintiff contracts with healthcare suppliers, such as Defendant, to provide services to members of insurance plans. (*Id.*) Providers bill

Plaintiff for medical services, and Plaintiff issues reimbursements pursuant to the terms

of supplier agreements. (*Id.*)

Plaintiff and Defendant entered into a supplier agreement on July 30, 2015. (*Id.*,

PageID.60, 80.) Defendant agreed to provide wound care supplies to members of

health plans Plaintiff administers. (*Id.*, PageID.62.) In § 5.5 of the parties' contract,

Defendant agreed to not bill patients directly for services that Plaintiff covered:

> [Defendant] shall look only to [Plaintiff] for compensation for Covered
> Services rendered to a Covered Person. [Defendant] agrees that in no
> event shall it bill, charge, collect or attempt to collect a deposit from, seek
> compensation or remuneration from, surcharge or have any recourse
> against a Covered Person for Covered Services, except that this provision
> shall not prohibit collection of charges for Non-Covered Services, co-
> payments or deductibles from the Covered Person by Participating
> Supplies . . . . [Defendant] agrees not to maintain any action at law or in
> equity against a Covered Person to collect sums that are owed by
> [Plaintiff], or its designee, to [Defendant] under the terms of this
> Agreement, even in the event [Plaintiff], or its designee, fails to pay,
> becomes insolvent or otherwise breaches the terms and conditions of this
> Agreement. This Section shall survive termination of this Agreement,
> regardless of the cause of termination of this Agreement, and shall be
> construed to be for the benefit of Covered Persons.

(*Id.*, PageID.77.)

On November 7, 2018, Plaintiff terminated its agreement with Defendant, alleging

that Defendant did not provide claim documentation as required under the contract's

audit provisions. (*Id.*, PageID.62; ECF No. 1, PageID.4.) Defendant then filed a lawsuit

for breach of contract in Illinois. (ECF No. 2, PageID.62.) The case remains pending in

the United States District Court for the Northern District of Illinois. (*Id.*)

On December 23, 2020, Plaintiff initiated an action in this district alleging breach

of contract. (ECF No. 1.) The same day the complaint was filed, Plaintiff filed a motion

for a temporary restraining order ("TRO") and a motion for preliminary injunction. (ECF

No. 2.) The court denied the request for a TRO on December 30, 2020, but directed Plaintiff to complete service of Defendant and set a telephonic scheduling conference for late January in order to brief and resolve the request for a preliminary injunction. (ECF No. 5, PageID.120.)

In its verified complaint, Plaintiff asserts that patients and a client health plan began to complain in June 2020 that Defendant was billing patients for medical services covered by the insurance plans that Plaintiff administered. (ECF No. 1, PageID.5.) The complaints continued, and even increased, over the course of 2020. (*Id.*) Plaintiff's Chief Operating Officer ("COO"), Lisa Wojnoavers stated that she reviewed complaints from patients, as well as bills Defendant sent to patients for services Plaintiff covered. (ECF No. 2, PageID.113.) On October 6, 2020, Plaintiff sent Defendant a cease and desist letter demanding that Defendant stop its improper billing. (ECF No. 1, PageID.5.) Defendant did not respond and, based on copies of invoices that Plaintiff attaches to its motion for preliminary injunction, Defendant continued to send bills to covered patients into December 2020. (ECF No. 2, PageID.94-111.)

On December 23, 2020, having no response to the October cease and desist letter, Plaintiff filed the instant complaint alleging breach of contract, and the motion for a TRO and for preliminary injunction. (ECF Nos. 1, 2.) Plaintiff asked that the court enjoin Defendant, pursuant to § 5.5 of the parties' agreement, from seeking remuneration from covered patients for covered services; Plaintiff also requested that the court order Defendant to withdraw in writing any improper bills previously sent to covered patients. (*Id.*, PageID.67.) In its motions, Plaintiff asserted that it had sought concurrence from Defendant's "Illinois counsel" before filing the motions, and it certified

3

that it had mailed the motions to Defendant's place of business in Bensenville, Illinois. (*Id.*, PageID.54, 114.)

The court denied the request for a TRO, and withheld ruling on the request for preliminary injunction until Defendant was served. (ECF No. 5, PageID.120.) Thus, on January 29, 2021, the court held a telephonic scheduling conference. Defendant's Illinois-based counsel attended the conference, but she did not make an appearance on the record before the conference. At the conference, Defendant agreed to accept service, and the parties agreed to suspend action in the case for two weeks while the parties engaged in discussions on scheduling and the motion for preliminary injunction. (ECF No. 9, PageID.126.)

The court held a second telephonic conference on February 12, 2021. By the time of the conference, Defendant's attorney had still not made an appearance on the record. At the conference, Defendant agreed to file by March 5, 2021, either a response to Plaintiff's motion for preliminary injunction or a motion to dismiss. (ECF No. 10, PageID.128.)

By March 5, 2021, Defendant's attorney had not made an appearance on the record. She was also not admitted to practice in the United States District Court for the Eastern District of Michigan. *See* E.D Mich. LR 83.20 (requiring that an attorney "must be a member in good standing of the bar of this court to practice in this court"). Furthermore, Defendant's attorney was not admitted into the State Bar of Michigan and had not hired local counsel. *Id.* (stating that an attorney who "is not an active member of the State Bar of Michigan must specify as local counsel a member of the bar of this court with an office in the district"). Instead of filing a response to Plaintiff's motion for

preliminary injunction on the court's docket, Defendant's attorney emailed the court's case manager a "Motion to Dismiss Plaintiff's Motion for Preliminary Injunction" in contravention of the local rules. *See* E.D. Mich. LR 5.1.1 ("[A]ll papers (not simply cases) . . . must be filed electronically."). The case manager instructed Defendant's attorney that she must file the document on the docket. The case manager extended Defendant's response deadline to the following week, but significantly, the case manager instructed Defendant's attorney that the court does not accept documents via email and does not file documents on behalf of parties.

Despite the court's warnings, Defendant did not file a response to the motion for preliminary injunction on the docket. On March 25, 2021, three months after Plaintiff's motion was filed, and three weeks after Defendant's original deadline to respond had expired, the court ordered Defendant to show cause by April 1, 2021, why Plaintiff's motion should not be granted. (ECF No. 11.) In its order, the court expressed that Plaintiff's motion appeared well supported, and that the court was inclined to grant it. (*Id.*, PageID.132.) The court also stated that it "does not accept for filing documents emailed by an attorney." (*Id.*, PageID.131.) By the time the court issued its order to show cause, Defendant's attorney had not made an appearance on the record, was not admitted to practice in this district, and according to court records, had not even initiated an application to file documents electronically in this district.

On April 1, 2021, rather than filing a response to the order to show cause, Defendant's attorney again emailed the court's case manager a document for filing. Defendant emailed a "Motion for Additional Time" and asked the court to accept the previously emailed "Motion to Dismiss Plaintiff's Motion for Preliminary Injunction," as a

response to the court's order to show cause. Inasmuch as the "Motion to Dismiss" was emailed to the court's case manager on March 5, and the "Motion for Additional Time" was emailed on April 1, the motions did not in any way address the concerns or deficiencies noted by the court in its order to show cause. Neither motion has been filed on the court's docket. Furthermore, to this day, neither Defendant's attorney nor any local counsel have made an appearance on behalf of Defendant. As it stands, Plaintiff's motion for preliminary injunction is unopposed.

## II.  STANDARD

The court considers four factors when deciding whether to grant a preliminary injunction. First, the court must determine "whether the plaintiff has established a substantial likelihood or probability of success on the merits of his claim." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014). Next, the court must consider "whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue." *Id.* Finally, the court must analyze "whether the injunction would cause substantial harm to others" and "whether the public interest would be served if the court were to grant the requested injunction." *Id.*

The four factors "are to be balanced against each other. A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

## III.  DISCUSSION

Applying and balancing the four factors to this case, *Liberty Coins*, 748 F.3d at 689-90, the court finds that injunctive relief is warranted.

6

## A.  Likelihood of Success on the Merits

Plaintiff has shown that it is likely to be successful on the merits. *Liberty Coins*,

748 F.3d at 689-90. A breach of contract claim has three elements. The plaintiff must

show "(1) there was a contract (2) which the other party breached (3) thereby resulting

in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495

Mich. 161, 848 N.W.2d 95, 104 (2014) (citing *Stevenson v. Brotherhoods Mut. Benefit*,

312 Mich. 81, 19 N.W.2d 494, 498 (1945)).

Plaintiff has attached a copy of the parties' agreement. Defendant explicitly

agreed that "in no event shall it bill, charge, collect or attempt to collect a deposit from,

seek compensation or remuneration from, surcharge or have any recourse against a

Covered Person for Covered Services." (ECF No. 2, PageID.77.) Yet Plaintiff asserts in

a verified complaint that Defendant has billed patients beginning in June 2020 for

medical services covered under Plaintiff's reimbursement plan. (ECF No. 1, PageID.5.)

Both patients and a health insurance plan notified Plaintiff of these violations. (*Id.*)

Plaintiff's COO confirmed in an affidavit that she has reviewed patient complaints, as

well as invoices that Defendant billed to covered patients for covered services. (ECF

No. 2, PageID.113.) In its motion, Plaintiff attaches medical bills, dated up to December

2020, that Defendant sent to covered patients. (*Id.*, PageID.94-111.) Thus, Plaintiff has

demonstrated that the parties entered into a contract and that Defendant breached the

contract. *See Miller-Davis Co.*, 848 N.W.2d at 104.

Plaintiff's COO stated that Plaintiff relies on a reputation of effective

administration to obtain clients and remain profitable. (ECF No. 2, PageID.113.) A rogue

medical provider that sends bills directly to patients, in violation of a service agreement,

harms Plaintiff's reputation, and according to the COO, Defendant's actions undermine Plaintiff's competitive standing. (*Id.*) Plaintiff asserts in its verified complaint that Defendant has caused tens of thousands of dollars of damages. (ECF No. 1, PageID.6.) Thus, Plaintiff has shown that it has suffered damages, *Miller-Davis Co.*, 848 N.W.2d at 104, and it has demonstrated a substantial likelihood of success on the merits. *Liberty Coins*, 748 F.3d at 689-90.

### B.  Irreparable Injury

Plaintiff has established that it will suffer irreparable injury if an injunction is not granted. *Liberty Coins*, 748 F.3d at 689-90. "As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) (quotations removed). Because lost profits and economic harm can be calculated and remedied through compensatory damages, they are generally not sufficient to obtain injunctive relief. *See Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003) ("[B]ecause any damages would be economic in nature and fully compensable monetarily, we find no potential for irreparable harm."); *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 599 (6th Cir. 2014) ("[M]ere loss of profits generally will not qualify as irreparable harm."). However, "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992)).

Plaintiff's COO stated in her affidavit that Plaintiff will suffer reputation injury if Defendant continues to bill covered patients for covered services. (ECF No. 2, PageID.113.) Plaintiff's success in business relies heavily on the belief, on the part of insurance companies, that Plaintiff administers health care services in an efficient and organized way, ensuring ease of convenience for both the insurers and their customers. (*Id.*) If patients continue to receive unexpected bills for medical services covered by their insurance, "[t]he resulting reputational harm [would be] nearly impossible to regain in [the] competitive and contract-based industry" in which Plaintiff operates. (*Id.*) Thus, Plaintiff has demonstrated that it will suffer harm to its consumer goodwill absent an injunction, *Certified Restoration Dry Cleaning Network*, 511 F.3d at 550, and the court finds that an injunction is necessary to prevent irreparable harm. *Liberty Coins*, 748 F.3d at 689-90.

### C. Substantial Harm to Others

An injunction will not cause substantial harm to others. *Liberty Coins*, 748 F.3d at 689-90. Defendant signed an agreement to not bill covered patients for covered services. (ECF No. 2, PageID.77.) An injunction requiring Defendant to comply with contract terms it willingly agreed to would not substantially or unfairly interfere with Defendant's business. Plaintiff presented strong evidence that Defendant violated an unambiguous contract term, and a court order enjoining Defendant's behavior should have been foreseeable. *See United States v. Edward Rose & Sons*, 384 F.3d 258, 264 (6th Cir. 2004) (no substantial harm where the enjoined party "knew of the risk [of an injunction] . . . when it undertook the enjoined activity"). Further, the injunction Plaintiff seeks will not bar Defendant from sending *any* medical bill to *any* patient. The injunction

would order only that Defendant desist from sending bills to covered patients for covered services and that Defendant withdraw improper billing it has previously transmitted. (ECF No. 2, PageID.67.) Such an order would not interfere with any standard, and legally compliant, collections processes at Defendant's company.

In the context of commercial agreements, courts often consider consumer harm when analyzing whether an injunction is appropriate. *See*, *e.g.*, *Certified Restoration Dry Cleaning Network*, 511 F.3d at 550 (reviewing harm to third-party consumers when issuing an injunction against a business providing laundry services); *S. Glazer's Distrib. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853 (6th Cir. 2017) (considering harm to purchasers and end consumers of when issuing an injunction against a beer distributor). If an injunction is issued, the patients covered under the insurance plans Plaintiff administers will no longer receive medical bills for services that the patients have no obligation to pay. Health insurance companies that contract with Plaintiff will accordingly receive higher quality administration and higher consumer satisfaction. (*See* ECF No. 2, PageID.65, 113.) The court finds that issuing an injunction would not result in substantial harm to consumers or third parties. *Liberty Coins*, 748 F.3d at 689-90.

### D. Public Interest

Pubic interest weighs in favor of issuing an injunction. *Liberty Coins*, 748 F.3d at 689-90. "[T]he enforcement of voluntarily assumed contract obligations" is a strong public interest. *Certified Restoration Dry Cleaning Network*, 511 F.3d at 550; *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 886 (E.D. Mich. 2016) (Drain, J.) ("There is a general public interest in the enforcement of voluntarily assumed contract[s].").

Defendant agreed to not bill patients for medical services covered by insurance Plaintiff administers. (ECF No. 2, PageID.77.) If an injunction were to issue, Defendant would not be prohibited from providing medical services to customers, and it would not be barred from billing patients for services that Plaintiff does not cover. The court does not believe there is a strong public interest in allowing Defendant to send medical bills to patients that the patients do not need to pay. If anything, sending the bills adds only to patient confusion and frustration, and may facilitate improper or double payments. In all, the court finds that an injunction requiring Defendant to comply with its contract terms advances the public interest. *Liberty Coins*, 748 F.3d at 689-90.

### E.  Balancing the Factors

There is a substantial likelihood that Plaintiff will be successful on the merits. Defendant agreed not to bill covered patients for covered services, (ECF No. 2, PageID.77), and Plaintiff has shown that Defendant sent bills to covered patients for covered services. (*Id.*, PageID.94-111, 113.) Furthermore, Plaintiff has demonstrated that it will suffer irreparable injury to its consumer goodwill if an injunction is not issued. (ECF No. 2, PageID.113.) An injunction requiring Defendant to comply with its contractual obligations would not substantially harm others, and finally, the injunction would advance the public interest in enforcing voluntarily assumed agreements. All four factors that courts consider when analyzing whether to issue an injunction weigh in favor of Plaintiff's motion. *Liberty Coins*, 748 F.3d at 689-90. Defendant has not provided a response in opposition, and Plaintiff's motion will be granted.

11

## IV. CONCLUSION

IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction (ECF No. 2) is GRANTED.

IT IS FURTHER ORDERED that Defendant is ENJOINED, pursuant to § 5.5 of its contract with Plaintiff, from requesting remuneration from covered persons for covered services.

Finally, IT IS ORDERED that Defendant withdraw in writing any pending requests for remuneration made to covered persons for covered services by **May 11, 2021**.

s/Robert H. Cleland                              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 12, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 12, 2021, by electronic and/or ordinary mail.

s/Lisa Barltett                              /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-13356.NORTHWOOD.MotionforPreliminaryInjunction.RMK.docx